# HENRY COOK V. JOSEPH KNOTT.

In order that a defense under the 16th section of the statute of limitation (of five years) should be complete, it must appear that, for five years before the institution of the suit, the defendant had been in the continuous adverse possession of the land, cultivating, using, or enjoying the same, paying the taxes thereon, and claiming under a deed or deeds duly registered. (Paschal's Dig., Art. 4623, Note 1032.)

See this case with reference to the effect of a recognition and a subsequent disclaimer by a defendant of the plaintiff as his vendor, as affecting the defense of five years' limitation.

The defendant, in 1845, entered upon a portion of the head-right tract of the plaintiff, claiming the same under a deed from third parties. Two years afterwards, the plaintiff threatening to dispossess the defendant, the latter contracted with the former for the land, paying him part cash and executing his note for the remainder, and taking the plaintiff's bond for title. On the plaintiff's demanding payment of the note after its maturity, the defendant refused payment, and notified the plaintiff that he (the defendant) held the land under his deed from the third parties referred to, and would continue so to do. *Held*, that the defendant's possession must be considered as adverse to the plaintiff up to the date of the contract between them; that although the effect of that contract might be to change the defendant's possession from an adverse to an amicable one, and it might thus interrupt the running of the statute of limitation, yet the open and positive disclaimer, and notice subsequently made and given to the plaintiff by the defendant, converted the possession of the latter again into an adverse and hostile possession, and put the statute of limitation again in motion; and, there being no evidence that the defendant ever afterwards recognized the plaintiff as his vendor, the possession of the defendant is to be considered as continuing adverse from and after such disclaimer and notice. *Held*, further, that the defendant's deed having been duly registered more than five years before the institution of the suit, and more than that period having elapsed after the disclaimer by the defendant and before suit, and the conditions of the statute being in all other respects fulfilled, the limitation of five years constituted a full defense.

The court refers to and approves the ruling in Rose v. Newman, 26 Tex., 134, 135, that a deputy clerk of the county court is authorized to authenticate deeds, notwithstanding the *obiter dictum* to the contrary in Miller v. Thatcher, 9 Tex., 482. (Paschal's Dig., Art. 491, Note 336.)

The business of a deputy clerk is to perform the duties of his principal. Taking acknowledgments of deeds for record in his county is one of those duties.

APPEAL from Navarro.    The case was tried before Hon. JOHN GREGG, one of the district judges.

The facts are fully stated in the opinion of the court. The appellee was plaintiff below, the action being trespass to try title.

*R. Q. Mills,* for appellant.—We are met with the objection, that our deed was authenticated for registry before a deputy clerk, and therefore was not "duly registered;" and this is the question upon which the court below decided the cause.    The language of the statute is not "duly authenticated" or "duly proven," but duly registered.    A deed can be duly proven without being duly registered, and it can be duly registered without being duly proven.

For instance, in the case of Frost v. Beekman, 1 Johns. Ch., 288, the mortgage was registered for $300 instead of $3,000; it was not "duly registered," and was held only to give notice of $300.    Again, where a statute requires deeds and mortgages to be recorded in separate books, and a mortgage is recorded in a deed-book, it is not "duly registered," and does not operate as notice. (2 Johns. Ch., 182; 6 Id., 432; 1 Paige, 531.)    To give the statute such a construction, would be to construe statutes of limitation as strictly as penal statutes.    On the contrary, they are now liberally construed as statutes of repose, not only by our own courts, but by the current of decisions in England and America.    Judge McLean, in McLung v. Silliman, 3 Pet., 278, says: "Of late years, the courts in England and in this country have considered statutes of limitation more favorably than formerly.    They rest upon sound policy, and tend to the peace and welfare of society. The courts do not now, unless compelled by the course of former decisions, give a strained construction to evade the effect of those statutes."    "Statutes of limitation are among the most beneficial of legislative acts, and ought to receive no other construction than their words naturally

import.   It is as much the duty of courts to give effect to laws of this description as any other the legislature may be disposed to pass." (Fisher v. Hampden, 1 Paine, 55.) "The statute of limitation is entitled to the same respect with other statutes, and ought not to be explained away." (Clementson v. Williams, 8 Cranch, 72.) "Statutes of limitation have been emphatically and justly called statutes of repose.   The best interests of society require that causes should not be deferred an unreasonable time.   This remark is peculiarly applicable to land titles.   Nothing so much retards the growth and prosperity of a country as insecurity of titles to real estate.   Labor is paralyzed where the enjoyment of its fruits is uncertain, and litigation without limit produces ruinous consequences to individuals." (Lewis v. Marshall, 5 Pet., 476.)   Where the deed, by mistake of parties, is not executed in conformity to law, the statute will nevertheless run and bar the action. (Sumner v. Stevens, 6 Met., 338; Ang. on Lim., 435.) The object of the statute, in requiring registration, is to give notice to the owner that the defendant is in possession of the land, and claiming to hold by that title. (Kilpatrick v. Sisneros, 23 Tex., 136.)   All the evidences of ownership required in the 16th section of the act, "to wit, a due registration of deed, possession of the land, cultivation, use, and enjoyment, and payment of taxes," are in this case.   (22 Tex.)   The deed was sufficiently registered to show the plaintiff that defendant was on the land, and claiming to hold it under that deed, and that is all the statute requires.

But the legislature has rendered valid and legal all authentications made by deputy clerks.   (O. &. W. Dig., Art. 1718.)

Besides, the plaintiff had actual notice, aside from the registry, that defendant was in possession of the land sued for, and claiming under the Porter deed; and actual notice supplies the place of registration in all other cases, and I

---
---

see no reason why the same rule should not hold good in
this.    The evidence is abundant that plaintiff had actual
notice and declined suing.    As far as the object and spirit
and reason of the law are concerned, the placing of the
deed on record did not add anything to the strength of
the claim.

No brief on file for the appellee.

SMITH, J.—The parties waived a jury, and submitted the
matters in controversy to the court below, who rendered a
verdict in favor of Knott for the land sued for.    Cook
moved for a new trial, which being overruled, he appealed
to this court.    The facts in this cause appear to be sub-
stantially as follows, to wit: The land claimed by Cook,
four hundred and sixty-two and two-third acres, is a part
of the one thousand two hundred and eighty acres, the
head-right of Knott.    Cook purchased the four hundred
and sixty-two and two-third acres of R. H. Porter and Eli
Smith, and received their deed of conveyance, dated 26th
April, 1845, which was registered in the county court
clerk's office of Robertson county, on 4th August, 1847, in
which the land then lay; that he took possession of the
four hundred and sixty-two and two-third acre tract under
that deed, and made valuable improvements on it.    That
after this Knott claimed the land, and threatened to dis-
possess Cook if he did not purchase of him immediately;
the latter, fearing he would be dispossessed by him, con-
tracted for the land, paid him $320, and executed his note
for $280, payable 1st May, 1848, and took Knott's bond
to make title when patent should be issued.    The bond is
dated 9th August 1847, and the patent was issued Decem-
ber 15, 1847.

In the latter part of 1848 or the beginning of 1849,
Knott demanded payment of the note; Cook declined to
pay it, and then denied the right of Knott to the land, dis-

claimed holding under him, and notified him that he held the possession of the land under his deed from Porter and Smith, and would continue so to do.    This was more than five years before the institution of this suit.    Cook paid the taxes on the land from 1847 up to the time of the trial, and had been using, cultivating, and enjoying the four hundred and sixty-two and two-thirds acre tract for that period, and disclaimed all interest in the residue of the one thousand two hundred and eighty acres.    There was some evidence that Porter was to have a part of the one thousand two hundred and eighty acre tract for locating it, but the nature and extent of this claim was not well established.

The leading point of the defense in this cause is, the limitation of five years.    That this defense may be complete, it must appear that the defendant had, before the institution of this suit, been in the continuous adverse possession of the premises, cultivating, using, or enjoying the same, paying the taxes thereon, and claiming under deed or deeds duly registered for five years.    It is quite apparent that Cook paid the taxes, and was in the possession, use, and enjoyment, of the premises to the extent of the boundaries of his deed for five years before the institution of this suit.

The entry and possession of Cook, under the deed from Porter and Smith, would be considered adverse to Knott, until he entered into the executory contract of purchase with him.    This contract might change his possession from an adverse to an amicable one, which would interrupt the operation of the statute of limitation; but his open and positive denial of the rights of Knott, in the latter part of 1848 or the beginning of 1849, and notice given him that he held the possession of the land under the Porter and Smith deed, and not under him, and would continue so, are evidence of a change of his possession to an adverse and hostile one, and the statute of limitation would again

begin to run from that date, and there is nothing to show any subsequent acknowledgment of the relation of vendor and vendee between them, and we must conclude possession continued adverse. (De Cordova v. Smith, 9 Tex., 129; Turner v. Smith, 11 Tex., 627.)

The appellant's counsel states, that it was contended below that the deed was not duly registered, from the fact that it had been authenticated for record and recorded by the deputy clerk of the county court. In the case of Miller v. Thatcher, 9 Tex., 482, this language is used: "The deed does not appear to have been authenticated by any person, known to the law, authorized to make such authentication. It was made by the deputy clerk of the probate court." Nothing in that cause demanded the decision of the question as stated in the opinion. In the case of Rose v. Newman, at Austin, 1862, 26 Tex., 131, the contrary doctrine has been announced, and it was, that the deputy clerk of the county court did have all the power and authority of the clerk himself to take proof of the execution of instruments, authenticate, and record them.

We find the following in the opinion delivered in the case of Rose v. Newman: "The business of a deputy is to perform the duties of his principal; taking proof of instruments for record in his county being one of the duties of the clerk of the county court, his deputy had authority to perform it."

In this opinion we fully concur. (Hart. Dig., 833–152; O. & W. Dig., Arts. 260, 1700, 1714.)

From the foregoing consideration of this cause we are of opinion, that the defense set up by Cook, of the five years' limitation, was fully sustained, and that a decree ought to have been rendered in his favor for the land. Therefore it is ordered, that the judgment below be reversed, and reformed so as to conform to this opinion.

REVERSED AND REFORMED ACCORDINGLY.