

# THE ATTORNEY GENERAL
# OF TEXAS

**Gerald C. Mann**
~~XXXXXXXXXXXXXXXXXX~~
~~WILL WILSON~~
**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

Hon. Fred Hartley
Assistant Criminal
District Attorney
Waco, Texas

Dear Sir:

Opinion No. O-1507

Re: (a) Is it legal for the Assistant
County School Superintendent to sign the
Superintendent's name to vouchers issued
by the trustees of a common school dis-
trict?
(b) May the Superintendent give his As-
sistant power of attorney to sign such
vouchers?

We have received your letter dated November 18, 1939,
wherein you request the opinion of this Department upon the above
stated questions.

The office of County School Superintendent is not a
constitutional office, but is provided for by statute, and the
duties of the County School Superintendent generally are such as
his title indicates. He is in truth superintendent of the county
public schools; such schools are managed, controlled, operated
and maintained under his superintendance. Though in a sense a
county officer, and called "County Superintendent," he is in fact
the officer of the State. Webb County vs. Board of School Trus-
tees, 65 S.W. 878.

Article 2693 of the Revised Statutes of Texas describes
the general duties of the County Superintendent as follows:

"The county superintendent shall approve all vouch-
ers legally drawn against the school fund of his county.
He shall examine all the contracts between the trustees
and teachers of his county, and if, in his judgment,
such contracts are proper, he shall approve the same;
provided, that in considering any contract between a
teacher and trustees he shall be authorized to consider
the amount of salary promised to the teacher. He shall
distribute all school blanks and books to the officers
and teachers of the public schools, and shall make such
reports to the State Superintendent as may be required
by that officer. He shall discharge such other duties
as may be prescribed by the State Superintendent."

The statutory provisions with respect to an Assistant
County Superintendent are meager. Article 2700, Revised Statutes
of Texas, dealing primarily with the salary and expenses of the
county school superintendent, reads in part as follows:

"The county board of trustees may make such further provisions as it deems necessary for office and traveling expenses for the county superintendent and any assistant he may have; provided that expenditures for office and traveling expenses shall not exceed three hundred dollars per annum, and the county board of trustees may make provisions for the employment of a competent assistant for the county superintendent who shall, in addition to his other duties, act as attendance officer; and said board is hereby authorized to fix the salary of such assistant and pay the same out of the same funds from which the salary and expenses of the county superintendents are paid;..."

Although no express authority to employ an assistant county school superintendent is conferred by the statute, either on the board or on the superintendent, it is held that a reasonable and necessary construction leads to the conclusion that the superintendent is vested with the power to select one. There are no provisions in the statutes describing the duties of an assistant county superintendent, except that he is to act as attendance officer, and he is not required to furnish bond or take an oath. Neeper vs. Stewart, (Civ.App.) 66 S.W.(2d) 812.

We quote from Tex.Jur., Vol. 34, pp. 601 and 607, as follows:

"The terms 'deputy' and 'assistant' are not synonymous, for there is a recognized distinction between them. A deputy is a person appointed to act for another, a substitute, a delegate, an agent; while an assistant is one who helps, aids or assists. 'Assistant' is the more comprehensive term. A deputy may be said to be an assistant, but public officers have assistants who are not deputies. 'Assistant' includes those who aid, whether sworn or not sworn. while 'deputy' implies only the sworn class. Again, as a rule a deputy may do anything that can be done by his principal, while an assistant's duties are to be performed in connection with and under the direction of the principal. Authority given an officer to appoint a deputy does not empower him to appoint, or to create the office of, an assistant. But the fact that a deputy is described in a transaction as an assistant, or vice versa, will not invalidate his acts." Naill vs. State, 129 S.W. 630; Neeper vs. Stewart, (Civ.App.) 66 S.W.(2d) 812; Cook vs. Knott, 28 Tex. 85; Rose vs. Newman, 26 Tex. 131.

"The duties of an assistant, as distinguished from a deputy, already noticed, are to be performed in connection with and under the direction of the principal. In the absence of a statutory provision to the contrary, the assistant never acts for the principal, and his capacity is more clerical than otherwise."

In the case of Naill vs. State, 129 S.W. 630, the appellant was convicted in the District Court of El Paso County, Texas, of bribery of the assistant city attorney of El Paso, Texas. Judge McCord, in his opinion, wrote the following:

"We are therefore confronted with the proposition whether 'assistant attorney' and 'deputy' means the same thing. In the case of United States vs. Adams (C.C.) 24 Fed. 348, it was stated that an 'assistant,' as used in the Act of March 14, 1864, providing for the appointment for an additional Assistant Secretary of the Treasurer, means one 'who stands by and helps or aids another. He is not a deputy, and cannot, therefore, act in the name of and for the person he assists, but only with him and under his direction, unless otherwise expressly provided by law.' An assistant does not mean a deputy. Clerks and other public officers have assistants who are not deputies, though a deputy is an assistant. The word 'assistant' is more comprehensive than the word 'deputy,' including those who aid, whether sworn or not sworn, while 'deputy' implies only the sworn class. See Ellison vs. Stevenson, 22 Ky. 271. There seems to be a distinction recognized by all authorities, and it will be found in every standard dictionary, between the word 'assistant' and the word 'deputy.' They are not recognized as synonymous terms. The 'assistant' is universally defined as one who aids, helps, or assists, while the word 'deputy' is defined to be a person appointed to act for another, a substitute, a delegate, an agent. In the absence of any statutory provision, the assistant never acts officially for the principal. He is not required to be sworn, nor to give bond. His capacity is more clerical than otherwise, while a deputy has a more enlarged meaning, and may do anything that his principal can do. Our law authorizes and creates the office of deputy sheriff and deputy clerk, and they are authorized and empowered to do anything that can be done by the principal."

The County School Superintendent, being in fact a State officer, cannot delegate his public duties to others, which duties are judicial in their nature, and call for the exercise of reason or discretion, as these duties are regarded as a part of the public trust assumed by him. Naill vs. State, 129 S.W. 630; Green vs. San Antonio Water Supply Company, (Civ.App.) 193 S.W. 453; Navarro County vs. Tullos, (Civ.App.) 237 S.W. 982; Horne Zoological Arena Company vs. City of Dallas, (Civ.App.) 45 S.W.(2d) 714.

Mechem, on Public Offices and Officers, at page 370, has this to say about delegation of mechanical or ministerial duties:

"Para. 568. Mechanical or ministerial Duties
may be delegated.--Where, however, the question arises
in regard to an act which is of a purely mechanical,
ministerial or executive nature, a different rule ap-
plies. It can ordinarily make no difference to any one
by whom the mere physical act is performed when its per-
formance has been guided by the judgment or discretion
of the person chosen. The rule, therefore, is that the
performance of duties of this nature may, unless express-
ly prohibited, be properly delegated to another.

"Where, however, the law expressly requires the act
to be performed by the officer in person it can not,
though ministerial, be delegated to another."

Throop, on Public Officers, at page 511, defines a min-
isterial act:

"A ministerial act may perhaps be defined to be one,
which a person performs in a given state of facts, in a
prescribed manner, in obedience to the mandate of legal
authority, without regard to, or the exercise of, his own
judgment upon the propriety of the act done."

We quote from your letter:

"Mr. Batson (County Superintendent of McLennan
County) also received a letter from the State Depart-
ment of Education giving their opinion that it was proper
for his assistant to sign said vouchers, as it was prac-
tically impossible in the larger counties for the super-
intendent to be present at all hours that people might come
in to have vouchers approved. At any rate, it seems to be
the custom throughout the state for the assistant in the
office to approve such vouchers, and in this office such
has been the custom for the past twenty-four years.

"If you recall Article 2690 of the revised civil stat-
utes the County Superintendent is required to spend four
days out of the week visiting the schools in session in his
county. Therefore, someone must act in his place in his
absence and it is our opinion that even though there is no
specific statutory provision giving an assistant such au-
thority, the legislature must have intended for someone to
fulfill that duty." (Parenthesis and underscoring ours.)

The signing of the vouchers by the Assistant County Su-
perintendent under the circumstances as set forth in your letter
carries with it the authority to approve such vouchers. The ap-
proval or disapproval of a voucher may legally be done only by
the County Superintendent in person.

The approval of all vouchers legally drawn as provided in Article 2693, supra, is not a purely ministerial, non-discretionary act, but is one that requires the exercise of judgment and discretion. In the case of Palmer Publishing Co. vs. Smith, 109 S.W.(2d) 158, Commissioner Martin, speaking for the Court, wrote:

"The clause 'legally drawn against the school fund of the county,' as used in Art. 2693, supra, undoubtedly confers upon him authority to decide as to the legality of the form of such vouchers. If we consider this language in connection with the 'educational set-up' of each county, we have no doubt it goes further than this and authorize an inquiry by him into the legality of the indebtedness represented by such voucher. We need inquire no further than whether or not he can pass his judgment on any one or more of the elements which go into the making of a 'legally drawn' voucher, and from such 'decide' its legality. We think his relation to the school fund is somewhat analogous to that of a county auditor with respect to county funds."

In view of the foregoing authorities you are respectfully advised that it is the opinion of this Department that both of your questions should be answered in the negative.

However, as a limitation and further explanation of the above conclusion, if the County Superintendent first approves the vouchers and then instructs his assistant to sign his (the County Superintendent's) name, this presents a different situation. The mere physical act of signing the name of the County Superintendent to the vouchers does not require the exercise of judgment or discretion on the part of the assistant; but is purely a ministerial or mechanical act which can be delegated by the County Superintendent.

Trusting that the above satisfactorily disposes of your inquiries, we remain

APPROVED DEC 7, 1939
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:        BWB, CHAIRMAN

DBD:pbp:wb

Yours very truly
ATTORNEY GENERAL OF TEXAS
By /s/ D. Burle Daviss
D. Burle Daviss, Assistant