## Texas & New Orleans Railroad Company
### v. R. J. Speights et al.

No. 974. Decided February 4, 1901.

**1. Limitation—Amended Petition—Date of Suit.**

Under the rules (13 and 14) governing amendments, the recital, in a first amended original petition, of the date of filing the original petition, required by rule 13 to be stated in the amendment, is to be taken as fixing correctly the date suit was begun, with reference to the issue of limitation, where the original petition was not brought up in the record. (Pp. 353, 354.)

**2. Same—Presumption.**

The appellate court could not, in support of a judgment which found in defendant's favor on the issue of limitation, presume that the original petition was not filed in time where the contrary appears from recitals of the amended petition which are not contradicted by the record. (P. 354.)

**3. Limitation—Suit Against Husband Alone.**

See this case as to effect, on limitation claimed by a wife and children in possession of real property, of suit against the husband, not in possession but confined in the penitentiary. (P. 355.)

**4. Adverse Possession—Interruption.**

One who, while holding adverse possession of the land of another, made an agreement to purchase it from the owner, terminated thereby the adverse nature of his possession, and on his failure to carry out the agreement his possession, if it again became adverse, could not be combined with that held before the agreement was made, to make up the period of limitation. (Pp. 355, 356.)

**5. Same—Husband—Wife's Separate Property—Abandonment of Possession.**

In determining rights acquired by limitation, the possession of the wife and children under a claim that the land was acquired during her former marriage, is controlled, as to its adverse character, by the acts of the husband as head of the family. (P. 356.)

**6. Same.**

While the husband's acts could not affect the title of the wife and her children, where they had none, but must rely on limitation not completed, his act in abandoning adverse possession and agreeing to purchase from the true owner bound them also as an abandonment of possession. (P. 357.)

Error to the Court of Civil Appeals for the First District, in an appeal from Liberty County.

The Texas & New Orleans Railroad Company sued Speights in trespass to try title. Defendants had judgment and it was affirmed on appeal by the plaintiff, who then procured writ of error.

*Denman, Franklin, Cobbs & McGown,* for plaintiff in error.—The trial court erred in not directing the jury to bring in a verdict for plaintiff, because the undisputed evidence showed that the defendant,

R. J. Speights, the husband of Mrs. Amanda Speights, at no time claimed the property in controversy by limitation, and also filed a disclaimer in said cause, which was binding upon his wife Amanda Speights and her children. Railway v. Bailey, 83 Texas, 23; McDannell v. Ragsdale, 71 Texas, 26; Holliman v. Smith, 39 Texas, 362; Railway v. Titterington, 84 Texas, 225; Sanders v. Duval, 39 Texas, 188; Holliday v. Cromwell, 37 Texas, 438; Beall v. Evans, 1 Texas Civ. App., 447; Cuellar v. Dewitt, 5 Texas Civ. App., 572; Chance v. Branch, 58 Texas, 493; Hurley v. Lockett, 72 Texas, 267; Warren v. Frederichs, 83 Texas, 384.

The court erred in submitting any issue of fact to the jury in said cause, in this, because the undisputed evidence was that Mrs. Amanda Speights and R. J. Speights were living together as husband and wife upon at least part of the property in controversy, and before the plaintiff was barred by the statute of limitation the said defendant R. J. Speights, in 1894, undertook to purchase said property from the plaintiff, paying part in cash for the purchase price, and made no claim thereto at that or any other time. That said property could only be acquired against plaintiff by adverse location under the law of limitation, and such property, when so acquired, would be community property between R. J. and Amanda Speights by occupancy, and of which the husband would have the right of disposition, and therefore the declaration of the husband, who was the head of the family, as to the character of possession held by him was binding upon his wife and her child, whether known to such wife or not. Same authorities.

The court erred in not granting plaintiff a new trial in this cause, because the court only submitted to the jury the defendant's claim of possession to said property by virtue of the statute of limitation of ten years, as the undisputed evidence showed that Mrs. Amanda Speights was in possession of part of said property in 1892 and thereafter married R. J. Speights in 1893, and they have since remained husband and wife, and did not show the adverse possession taken and continued for the requisite period of time. Same authorities.

The court erred both in refusing to instruct a verdict for plaintiff and in refusing to grant plaintiff a new trial, because the undisputed evidence shows that R. J. Speights, the husband of Mrs. Amanda Speights, agreed to purchase the land in controversy from plaintiff and paid part of the purchase price for same during the year 1894, his said wife knowing his purpose to purchase part of said land, and from 1894 until after the institution of the suit no notice was brought to plaintiff of any adverse claim upon the part of R. J. Speights or on the part of Amanda Speights, or on the part of her children; and the said husband having made such disclaimer long prior to the time when any limitation could mature into title by adverse possession on the part of either husband or wife, the said plaintiff could not be defeated in the recovery of the title to said property by an adverse claim of Mrs. Amanda Speights and her child by a former marriage of said land by adverse possession, independent of the act and dis-

claimer of her husband in regard to the title to said property. Same
authorities.

The court erred in not directing a verdict for plaintiff, because the
defendants failed to show a continuous adverse possession of the land
in controversy for a period of ten years, no request having been made
by defendants to submit any other issue; besides, the deeds introduced
by them did not embrace or describe the land in controversy. Same
authorities.

*Stevens & Marshall*, for defendants in error.—The disclaimer filed
by R. J. Speights, who did not claim the land in controversy, was not
binding upon his wife Amanda Speights, or Ruth Speights, who
claimed the property adversely to plaintiff in error. McKay v. Tread-
well, 8 Texas, 179; Hurley v. Lockett, 72 Texas, 267; Reynolds v.
Lansford, 16 Texas, 292; Reddin v. Smith, 65 Texas, 28; Blair v.
Finlay, 75 Texas, 210.

The declarations of the husband R. J. Speights, if any he has made,
do not bind his wife Amanda Speights and her child Ruth Speights,
who claim the land in controversy as their separate property. Same
authorities.

The court did not err in refusing to sustain the third and fourth
assignments of error of plaintiff in error, because Amanda Speights
did not know of the alleged attempt of R. J. Speights to purchase the
land in controversy, if such attempt he ever made, but knew of R. J.
Speights' wish to purchase the north half of section 7, and did not
know that the land in controversy was part of section 7, but under-
stood that it was part of the Faulk survey and claimed it as such.
(Finding of facts of Court of Civil Appeals. See opinion.)

We wish here to discuss the question whether or not suit was filed
before the title ripened into limitation. The Court of Civil Appeals
held that there was no proof of the date of filing plaintiff's original
petition; that the recital in the amended petition, that the original
was filed June 14, 1898, was not sufficient proof of that fact, on the
authority of Cotton v. Jones, 37 Texas, 34. It further held that as
the amended petition was filed January 15, 1900, by which time
limitation had run, and the jury having found for defendant, and
the court having overruled the motion for new trial, it would be
presumed that the plea of limitation was sustained by the proof.
Moody v. Moeller, 72 Texas, 635. We believe that in the light of
this record these authorities govern the case, and that the decision
of the Court of Civil Appeals is correct. Courts take judicial notice
of the time when suit is filed; and as an additional precaution, to
show that in the case at bar the District Court and the Court of
Civil Appeals were correct as to the time suit was filed, we applied
for and obtained a special writ of certiorari, to show that Amanda
Speights and Ruth Speights were not made parties to the suit until
the filing of the amended petition, January 15, 1900. The original
petition brought up with this writ discloses that only R. J. Speights

was made defendant originally. Plaintiff in error contends that this was not introduced in evidence. That does not affect the question. The original petition was part of the record of the case. It shows that the court did not make a mistake in taking judicial notice that suit was not filed against Amanda Speights and Ruth Speights until the statute of limitation had run. This writ and the paper brought up with it are part of the record in this court, and we refer the court to them. Courts take judicial notice of the time suit is filed when it is of record in the case. Hutchins v. Flintge, 2 Texas, 473.

Plaintiff in error, however, contends that the suit against R. J. Speights, the husband, arrested limitation in favor of his wife, on the authority of Allen v. Read, 66 Texas, 20; but it will be observed that the case referred to and the authorities there cited hold that where the husband is in possession of the property claimed by his wife as her separate property, suit against the husband will arrest limitation in favor of the wife. In the case at bar, plaintiff's original petition itself, its amended petition, the transcript, and the decision of the Court of Civil Appeals, all show that R. J. Speights was incarcerated in the penitentiary at Huntsville when suit was instituted against him to recover the land in controversy. Therefore, filing suit against Speights under those circumstances did not stop the statute of limitation running in favor of his wife. Civilly, and in contemplation of law, he had abandoned his wife. She was the head and the representative of the family. She was in possession of the land herself and her husband was not living on same at all. Confinement of the husband in the penitentiary is such an abandonment of the wife as will make her the head of the family. 64 Texas, 226.

WILLIAMS, Associate Justice.—This is an action of trespass to try title brought by plaintiff in error against defendant in error to recover a tract of land in Liberty County. Plaintiff in error showed title from the State to the locus in quo, but was defeated in the District Court and Court of Civil Appeals by the defense of limitation under the ten years statute. The time when the possession relied on by the defendants commenced was not shown by the evidence more definitely than that it was taken in the year 1888.

The Court of Civil Appeals held that the record before it did not show that suit was instituted within ten years after the expiration of the year 1888, and, indulging the presumption, in support of the action of the District Court, that it was not brought in time, concluded that the judgment should be affirmed. The case was tried in the District Court upon an amended petition filed January 15, 1900, which stated that it was filed as an amendment and in lieu of the original petition, filed June 14, 1898. This amendment was the only pleading in favor of the plaintiff contained in the record before the Court of Civil Appeals, and that court did not regard the recital in the amended petition as sufficient to show the date of the filing of the

original petition. We think the statement in the amendment of the date of the original petition, in the absence of anything appearing to contradict it, should be taken as true.

Rule 13 for district courts provides: "The party amending shall point out the instrument, *with its date,* sought to be amended * * * and amend such instrument by preparing and filing a substitute therefor, entire and complete in itself."

Rule 14 provides: "Unless the substituted instrument shall be set aside on exceptions ‚* * * the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause, unless some error of the court in deciding upon the necessity of the amendment, or otherwise in superseding it, be complained of, and exception be taken to the action of the court, or unless it be necessary to look to the superseded pleading upon a question of limitation."

One purpose of the requirement in rule 13 was to preserve upon the face of the record proper evidence of the history of the cause, without resort to the abandoned pleadings; and when it is properly complied with, the pleading on which the trial proceeds furnishes, both in the trial court and upon appeal, all the information necessary to the decision of all such questions as that which has arisen here. Of course, the rule did not intend that rights should be lost in the mere process of amending the pleadings, and therefore provision was made in rule 14 to secure litigants against such a result. The trial court takes notice of the true date of filing the suit on trial before it as such date appears from the original petition, and may see from an inspection of it whether or not such date is incorrectly stated in an amendment; and the appellate court, reviewing its action, may do the same thing, but to enable it to disregard a recital such as that in question, designed by the rules to furnish the proper date, the other papers showing its incorrectness should be sent up with the record; otherwise the court must be guided by that which the rules have provided as the proper information upon such points. Rucker v. Dailey, 66 Texas, 286, 287.

In the case of Moody v. Moeller, 72 Texas, 635, the amended petition did not state the date of the original and hence did not comply with the rule.

In so far as the opinion in the case of Cotton v. Jones, 37 Texas, 34, intimates that it is necessary to introduce in evidence file marks upon a petition to show the date of institution of the suit, it conflicts with the decision in Hutchins v. Flintge, 2 Texas, 475, and is not regarded as correct. The court, in Cotton v. Jones, did take notice of the date of filing of the petition on demurrer and held that the suit was not brought in time.

The suit must therefore be treated as begun in June, 1898, and, since the burden was upon the defendants to show possession for ten years before the commencement of the action, they failed to make

out their case in not showing that the entry on which they relied was made prior to June 14, 1888.

While the plaintiff's motion for rehearing was pending in the Court of Civil Appeals, the defendants filed an application for a certiorari to have brought up the original petition of which they filed a certified copy, from which it appeared that the date of its filing had been correctly given in the amended petition, but which developed facts raising another question concerning the defense of limitation. The record does not show that the Court of Civil Appeals took any action upon this application or any notice of the paper filed, and there would be some difficulty in the way of our giving effect to matters thus presented were it necessary to pass upon them. As the view which we take upon another point is decisive of the case, it is unnecessary that we determine the questions thus sought to be raised, and we shall only state them to avoid any misapprehension of our decision. The copy of the original petition shows that R. J. Speights was the only party therein sued, the defendants in error, who are his wife and children and her child by a former marriage, having been sued for the first time in the amendment of 1900. The petition also alleged and the proof showed that when the suit was filed against Speights and during its pendency, he was not in possession of the land, but was confined in the penitentiary, while Mrs. Speights and her child by her former husband were in possession claiming the land as their own property; and the contention is urged with much force that, under these circumstances, suit against the husband did not interrupt limitation running in favor of the wife, and that ten years had elapsed before she and her child were sued.

Were we to so hold, the judgment could not be sustained. The evidence relied on to support the defense is that in 1888, one Weaver, having become the owner of the Faulk survey adjoining section number 7, of which the land in controversy is a part and which belongs to plaintiff, entered into possession, which he extended so as to include the part of section number 7 in controversy, believing it to be included in the Faulk survey. In 1890, Weaver conveyed the Faulk survey to Jack Speights, the first husband of defendant, Amanda, and he also entered into possession of the land in controversy, claiming it as part of that purchased from Weaver, and held it until his death, after which his widow, Amanda, and their child, Ruth, continued upon it until her marriage with R. J. Speights, which occurred in 1893. Thereafter the family thus formed held possession until Speights was sent to the penitentiary, since which time his wife, with her children, has maintained such possession until the trial below, the claims of all parties, except as stated below, being that the land was the property of herself and daughter Ruth, acquired through her former marriage. The uncontradicted evidence showed and it was found by the Court of Civil Appeals that in 1894 or 1895, before he was convicted and while he was living with the family as its head, R. J. Speights, having learned through a survey made by plaintiff that the land now in suit

was a part of section number 7, entered into an oral agreement with an agent of plaintiff to buy it and pay for it partly in cash and partly on credit, and it was agreed that he should be allowed a short time in which to raise the money for the cash payment, and that when it should be completed, he should execute his notes for the deferred payments and receive a deed. He paid a small part of the cash installment, but some time afterwards notified plaintiff's agent that he would not pay any more and would not buy the land, and requested the return of the money paid, to which the agent acceded.

These facts amounted to such an acknowledgment of plaintiff's title by Speights as would, during the pendency of this agreement, at least, take from his possession any adverse character. Cook v. Knott, 28 Texas, 85; Ingersoll v. Lewis, 11 Pa. St., 212.

If it were conceded that after the agreement came to an end Speights' possession again became adverse, it could not be connected with the possession which antedated that transaction to make up the bar and did not thereafter last for a sufficient time before the last amended petition was filed. This would be the attitude of the matter were the rights of Speights alone involved, and it remains to inquire what effect his acts had upon the claims of his wife and her child, Ruth.

It is urged that their claim, having originated during the first marriage, was their separate property, and that a title acquired by the possession would have been theirs and could not be affected by the acts or declarations of her husband. We need not determine what would have been the character of the title had it ever been acquired by limitation, since, in our opinion, the effect of the transaction is the same, whether such title would have been separate or community property. No title had been acquired by limitation, and in order to mature one, it would have been necessary to give effect to the possession held after the marriage and before Speights was convicted. After he became the head of the family, Speights held and controlled the possession, and its character, as adverse or not, depended on his action. Neither Mrs. Speights nor her child had any possession distinct from his, and hence both must avail themselves of that possession in order to acquire any title to the property. The plaintiff, being the true owner, had the right to deal with him as the party in possession, and when, by his transactions, he destroyed its adverse character, nothing was left upon which the statute could operate. In the case of Allen v. Read, 66 Texas, 20, it was said: "The husbands of Mrs. Thompson and Mrs. Jeffus were in possession of the lands claimed by their wives as their separate estates, at the time the suit of Fisher, guardian, was brought against them and others, and while the wives could not by that action be affected in their title or right to possession, yet the possession which their husbands held for them ceased to be, within the meaning of the law, a peaceable possession, as would it had the action been against their tenants in possession. Read v. Allen, 56 Texas, 180, 194; Read v. Allen, 58 Texas, 382; McKelvain v. Allen, 58 Texas,

388." With equal truth it may be said in this case that while Speights' acts could not have affected any title which his wife and her child may have had, yet, as they had none, but must rely on Speights' possession to acquire one by limitation, when he changed his attitude towards the true owner and agreed to purchase its title, that possession ceased to be adverse. This becomes obvious when it is reflected that had he completed his purchase and obtained plaintiff's title, his possession would have been a rightful one, held in his own right, and there could have been no holding adverse to his by other members of the family. This doctrine is clearly set forth in Hurley v. Lockett, 72 Texas, 262. See also LeMaster v. Dickson, 91 Texas, 593.

The trial court, by the charge given, recognized the rule to be as we state it, but the jury disregarded it. The evidence upon the point is clear and uncontroverted, and it therefore becomes proper for this court to reverse the judgment and adjudge the land to plaintiff in error.

*Reversed and rendered.*