## TURKEY STATE BANK et al. v. ESTELLINE STATE BANK. (No. 2190.)*

(Court of Civil Appeals of Texas. Amarillo. Feb. 13, 1924. Rehearing Denied March 12, 1924.)

1. States ⬅191(2)—Action against banking commissioner held not against state so as to necessitate consent.

An action to establish a claim payable out of the depositors' guaranty fund against an insolvent bank and the Commissioner of Insurance and Banking as· an officer of the executive department of the state is not an action against the state such that consent of the state to be sued must be alleged.

2. Banks and banking ⬅15—Compliance with time limitation for bringing suit to enforce claim against depositors' guaranty fund held sufficiently alleged.

That a suit to establish a claim against an insolvent ,bank payable out of the depositors' guaranty fund was brought within six months of the rejection of the claim by the Banking Commissioner held sufficiently shown by the amended petition; a direct allegation that the suit was commenced within such six-month period being unnecessary.

3. Banks and banking ⬅15—Inability to pay debt not conclusive, but considered on question of actual insolvency.

Mere inability of a bank to pay a debt due another bank is not evidence of actual insolvency, but, taken in connection with other circumstances, will be considered in determining the question of actual insolvency.

4. Banks and banking ⬅15—Knowledge of insolvency of bank held not shown so as to invalidate transfer of deposit to noninterest-bearing deposit.

Where a bank owning an interest-bearing deposit in another bank by agreement with the debtor bank transferred same to a noninterest-bearing deposit entitled to protection and payment out of the depositors' guaranty fund at a time when the debtor bank was actually insolvent, and just before taking over of the bank by the banking commissioner, held, that such fact alone was insufficient to establish knowledge on the part of the depositing bank of actual insolvency, and render the transfer null and void under Rev. St. art. 551.

---

Appeal from District Court, Hall County; J. V. Leak, Judge.

Action by the Estelline State Bank against the Turkey State Bank and another. Judgment for plaintiff, and defendants appeal. Affirmed.

W. A. Keeling, Atty. Gen., and Wallace Hawkins and John W. Goodwin, Asst. Attys. Gen. (Elliott & Moss, of Memphis, of counsel), for appellants.

Fires & Williams, of Childress, for appellee.

RANDOLPH, J. This suit was instituted by appellee against the Turkey State Bank and the commissioner of insurance and banking, to establish its claim in the sum of $7,467.82, as a noninterest-bearing and unsecured deposit in the Turkey State Bank, in liquidation, and payable out of the depositors' guaranty fund. The trial court rendered judgment for appellee, and the commissioner and the Turkey State Bank have appealed from that judgment to this court.

[1] Appellant's first and second assignments of error present the question that the trial court erred in not sustaining the demurrer of the commissioner to the plaintiff's petition, because said petition shows on its face to be an action against J. L. Chapman, insurance and banking commissioner, as an officer of the executive department of the government of the state of Texas, and because plaintiff's petition shows on its face to be in effect a suit against the state of Texas, and no consent of the state to be sued is alleged. These questions have been settled by the Supreme Court adversely to appellant's contentions. Kidder v. Hall, 251 S. W. 497.

[2] The third assignment is to the effect that the general demurrer should have been sustained because the petition fails to state any facts showing that this suit was filed within six months after the rejection of appellee's claim by the banking commissioner.

An agreement between attorneys for the parties to this cause, by which it was agreed that the original petition should be left out of the transcript, appears in the transcript. It would have appeared from the file mark on that instrument when the suit was filed. But the first amended original petition contains this recital:

"Comes now the plaintiff, and leave of the court first being had and obtained, files this, its first amended original petition, in lieu of its original petition filed herein on December 16, 1921, and for amendment," etc.

We think this sufficiently established the date of the filing of the original petition. See rules 13 and 14 for the district court, Harris' Rules of Court.

In the case of T. & N. O. Ry. Co. v. Speights, 94 Tex. 350, 60 S. W. 659, the Supreme Court, says:

"The trial court takes notice of the true date of filing the suit on trial before it as such date appears from the original petition, and may see from an inspection of it whether or not such date is incorrectly stated in an amendment; and the appellate court, reviewing its action, may do the same thing, but to enable it to disregard a recital such as that in question, [the date of the filing of the original petition as recited in the amendment] designed by the rules to furnish the proper date, the other papers showing its incorrectness should be sent up with the record; otherwise the court must be guided by that which the rules have provided as the proper information upon such points. Rucker v. Dailey, 66 Texas, 286, 287."

The record showing the date of the filing of the suit and the petition alleging that the banking commissioner rejected plaintiff's claim on the 12th day of November, 1921, we hold that the claim was sued on within the time required by law, unless it was a condition precedent necessary to be affirmatively pleaded.

The allegation that it had filed suit was not a necessary allegation, as the filing of suit is not a condition precedent. The statute requires that such suit be filed within the six months, it is true, but the requirement that suit be filed is no part of the cause of action. We can see no necessity for the party filing suit saying, "I have filed this suit within six months after rejection of this claim by the commissioner of insurance and banking," when the very thing it is doing fulfills the requirement. When the suit had been filed, and not within six months, then it would have devolved on the trial court to have sustained the appellant's general demurrer, it appearing from the record that the suit had not been filed within the time. But, the suit appearing to have been filed in time, so far as the record discloses, if the recitals were false, it was incumbent on the appellant to have pleaded such facts and have invoked the real facts as a bar of limitation to any recovery by appellee. 21 R. C. L. latter part of section 29, pp. 463, 464. We also cite the case of J. L. Chapman v. Tyler County, 259 S. W. 301, recently decided by the Court of Civil Appeals at Beaumont, and State Banking Board v. Pitcher (Tex. Civ. App.) 256 S. W. 996.

The fourth, fifth, sixth, and seventh assignments of error present substantially the alleged error of the trial court in rendering judgment in favor of appellee establishing appellee's claim as a general deposit, because the uncontradicted evidence shows that at the time appellee surrendered its interest-bearing claim in consideration of the promise of the Turkey State Bank to consider its debt to appellee as a general deposit said bank was insolvent, and appellee knew that it was in financial distress and unable to pay its claim; that said bank was without money to pay appellee or to represent any.

deposit; that such agreement to leave the money in the Turkey State Bank resulted in charging the depositors' guaranty fund with the payment thereof, and was a fraud upon said fund, and void.

The Estelline State Bank, appellee, deposited in the Turkey State Bank on the 13th of August, 1920, the sum of $10,000, under the agreement that the deposit should draw 7 per cent. interest and the money was to be turned to the Estelline Bank on October 1st. It does not appear that demand was made for the money on October 1st, but Fry, the cashier of the Turkey State Bank, wrote and told the Estelline Bank that he would like to keep the money longer if that bank could spare it, and was informed that it was "all right." The money at this time was still bearing 7 per cent. interest. Along about the 1st of November Fry again wrote the appellee, and said he wanted to keep the money longer, and, if appellee would let him keep it, he would pay 10 per cent. interest. The appellee wrote and refused this request, and stated that it wanted the money, but for Fry to go ahead and keep it, and they would not charge him any interest on it. No further communications passed between the parties during the month of November. Moore, the president of appellee bank, testifies that he told Fry to keep the money, and for him to repay it as he could, that is, $500 or $100 as he could get the money in. The parties saw one another some time between the 1st and 10th of December, and the account at that time was cut down from $10,-000 to $7,000 by delivery of some school warrants to appellee. At that time it was agreed that the money should remain with the Turkey State Bank as a noninterest-bearing deposit. It was agreed between the parties in the above-mentioned written agreement that on December 1, 1920, the Turkey State Bank was insolvent, but it was not admitted that appellee knew of the insolvency. Moore, appellee's president, who was the agent handling this deposit for appellee, testified that he thought the Turkey State Bank was just as solvent as any bank, and that he did not know of such insolvency; that said deposit was not secured in any manner; that the deposit was purely an accommodation deposit; and that he left it in that form so that it would be subject to check.

Appellants contend that under article 551, Revised Civil Statutes of Texas, this agreement to change the character of the deposit from an interest-bearing to a noninterest-bearing unsecured deposit was void because it was done with an intent to prefer a creditor, and was done for the purpose of giving the depositor protection in the guaranty fund, and with knowledge of the insolvency of the debtor bank.

That portion of article 551 applicable here is as follows:

"All transfers of the notes, bonds, bills of exchange or other evidence of debt, owing to any bank or trust company organized under this title, or of deposits to its credit, all assignments of mortgages, securities on real estate, or of judgment or decrees in its favor, all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to it made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this title or with a view to the preference of one creditor to another, shall be utterly null and void."

The evidence leaves us to presume that the Turkey State Bank was a going concern up to the time it was taken over by the commissioner of insurance and banking. There is no evidence that it did not continue its regular business up to that time. And the evidence further shows that appellee was ignorant of the Turkey State Bank's insolvency, unless the failure of that bank to repay the deposit to appellee and the continued requests for time in which to pay same brought home notice to the appellee that the Turkey State Bank was insolvent, or that such transfer was made in contemplation of insolvency.

In the case of Smith v. Ojerholm et al., 93 Tex. 35, 53 S. W. 341, the Supreme Court of Texas, in discussing when a party is insolvent, says:

"When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note although he might have ample property to satisfy an execution against him. It is in a case where the principal has property, but is not in a condition to meet his debts as they fall due, that the necessity is the more urgent to bring suit for the protection of the indorser. It cannot be said that a debtor is insolvent within the meaning of our law as to his creditor when he holds property against which the creditor may enforce a lien for the payment of the debt."

[3] In the case at bar there is evidence that the Turkey State Bank was insolvent on the 1st day of December furnished in the agreement of counsel, and the above decision is quoted for the purpose of showing that mere inability to pay its debt to appellee was not evidence of actual insolvency, but, taken in connection with other circumstances, it will be considered by the court to determine the question of actual insolvency. See Posey v. McManis, 28 Tex. Civ. App. 452, 67 S. W. 792.

Article 551, above cited, is a substantial copy of article 5242, U. S. Rev. Stat. (U. S. Comp. St. § 9834). In that part we are now asked to interpret, and in view of that fact, and of the authority of Congress to enact

bankruptcy laws upon such questions as insolvency, we will follow the suggestion made by the Third Court of Civil Appeals in the case of Owens v. American Nat. Bank, 36 Tex. Civ. App. 490, 81 S. W. 989, and refer for our guidance not only to the definition of insolvency as therein given, but also to the decisions of the United States Supreme Court construing that statute.

[4] The fact of insolvency of the Turkey State Bank at the time of the transfer of the deposit from an interest-bearing to a noninterest-bearing deposit cannot be construed in such way as to make the mere transfer an act of insolvency, so far as appellee was concerned, unless it was done with knowledge on the part of appellee that such bank was insolvent or was contemplating insolvency. As long as the Turkey State Bank was open and transacting its ordinary and regular business, appellee had the right to rely upon the solvency of that institution.

In the case of Earle v. Carson, 188 U. S. 46, 23 Sup. Ct. 254, 47 L. Ed. 375, a sale of stock in a bank, made immediately preceding the bankruptcy of the bank, which sale was not noted in the stock registry of the bank, was attacked upon the ground that at the time of the sale of the stock the reserve of the bank had fallen below the legal requirements, which was known to the party at the time he sold the stock. Upon the proposition that such a sale was void if at the time of the sale the assets of the bank, had they been realized on, would have been insufficient to pay its debts, the court says:

"The proposition is supported by what is assumed to be the essential nature of the double liability of a stockholder in a national bank and the time when such liability, by operation of law, becomes irrevocably fixed. Passing for a moment an analysis of the premises upon which the argument proceeds, let us determine the result to which it necessarily leads. Proceeding to do so, it becomes clear that the effect of maintaining the argument would be to virtually prevent the exercise of the power to transfer stock 'like other personal property,' which the statute gives in express terms. Rev. Stat. 5139; U. S. Comp. Stat. 1901, p. 3461. That such would be the result if the validity of every sale of stock depended, not upon the good faith of the seller, but upon the condition of the bank as subsequently developed is, we think, obvious. Certainly, it cannot in reason be said that the power would exist to sell stock like any other personal property if, before the power could be exercised, the seller must examine the affairs of the bank, marshal its assets and liabilities in order to form an accurate judgment as to the precise condition of the bank."

In the case of McDonald v. Chemical National Bank, 174 U. S. 618, 19 Sup. Ct. 790, 43 L. Ed. 1106, the Supreme Court of the United States also lays down the rule as to actual insolvency not known to the defendant as follows:

"Nor can a finding that the payments and remittances made to the Chemical National Bank, on the dates above mentioned, were made in contemplation of insolvency and with an intent to prefer that bank, be based on the mere allegation that the Capital National Bank was * * * insolvent, and that its insolvency must have been known to its officers. It is matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency, as disclosed by subsequent events. It cannot surely be said that all payments made in the due course of business in such cases are to be deemed to be made in contemplation of insolvency, or with a view to prefer one creditor to another. There is often the hope that, if only the credit of the bank can be kept up by continuing its ordinary business, and by avoiding any act of insolvency, affairs may take a favorable turn, and thus suspension of * * * business be avoided."

The fact that this change in the character of the deposit was made immediately preceding the taking over of the bank by the commissioner of banking, and the fact that the bank on that day was actually insolvent, while it may arouse suspicion, and create an impression of mala fides, yet such suspicion cannot be allowed to supply the place of evidence or to overrule the proof tendered.

There is no question but that there was a deposit made in the Turkey State Bank by appellee bank. In that there is not any semblance of simulation; the only opportunity of simulation was in the transfer of this deposit to the noninterest-bearing class. Consequently upon this question the case of Kidder v. Hall, supra, can have no bearing, as the evidence is uncontradicted, and it is only a question of law upon the facts proved.

We therefore overrule appellants' assignments and affirm the judgment of the trial court.