## ODEM v. LEAHY. (No. 7189.)

(Court of Civil Appeals of Texas. San Antonio. June 11, 1924. Rehearing Denied July 2, 1924.)

**1. Adverse possession ⬅➡106(4)—Superior paper title prevails unless better title by limitation is established.**

Where plaintiff showed a superior paper title, he was entitled to recover, unless defendant established a better title by limitations of 10 years, which under Rev. St. art. 5679, is a full title precluding all claims.

**2. Adverse possession ⬅➡82—Frauds, statute of ⬅➡56(1)—Claim based on unregistered writing, and on parol gift, held not assertable, as vesting title.**

In trespass to try title, any claim asserted by defendant, by parol gift or unregistered writing, could not be considered as vesting title in view of Rev. St. art. 5676, requiring such writing to be registered, and of statute of frauds.

**3. Adverse possession ⬅➡43(3)—Unrecorded deed of grantor in adverse possession puts grantee in privy with such possession.**

The unrecorded deed of a grantor in adverse possession puts the grantee in privy with such possession, and to that extent only is the unrecorded deed available to grantee in trespass to try title.

**4. Adverse possession ⬅➡13—What kind of possession affords predicate for acquisition of another's title stated.**

To acquire title to another's property, the possession and use must be continuous, hostile, adverse, unqualified, and unmistakable to the true owner, and the claim must be consistent with that possession.

**5. Adverse possession ⬅➡114(1) — Evidence held not to support jury's findings defendant acquired title to land under 10-year limitation.**

In trespass to try title, evidence *held* not to support jury's findings defendant acquired title to land by possession under 10-year statute of limitations.

**6. Adverse possession ⬅➡88—Failure to pay taxes on land claimed under 10-year statute held circumstance against claim of title.**

Failure to pay taxes on land claimed under 10-year statute of limitations could be looked to, under the peculiar facts of the case, as a circumstance against defendant's claim of title notwithstanding a payment of the taxes was not necessary to mature title.

**7. Trespass to try title ⬅➡17—Defendant in trespass to try title required only to raise bar to prevent entry.**

A suit in trespass to try title being a possessory action, all that defendant is required to do is to raise the bar to prevent an entry.

**8. Limitation of actions ⬅➡182(3)—Trespass to try title ⬅➡33—Defense of limitation must be specially pleaded; no recovery other than that specially pleaded suffices to defeat right of entry.**

In trespass to try title, the defense of limitation must be specially pleaded, and no other recovery than that specially pleaded will suffice to defeat the right of entry.

**9. Adverse possession ⬅➡50 — Husband and wife ⬅➡249—Property acquired by wife by limitation without husband's concurrence is community property; husband's declaration bound wife.**

Property acquired by wife by limitation, even without her husband's concurrence, is community property, subject to his disposal alone, and his declaration will bind his wife as well as himself.

**10. Adverse possession ⬅➡61—Trusts ⬅➡138.—Adverse holding of land as trustee or agent held inconsistent with claim of ownership in self.**

Where one held land adversely as trustee or agent for his parents, such holding was inconsistent with any claim of ownership in himself.

Appeal from District Court, San Patricio County; T. M. Cox, Judge.

Suit by D. Odem against H. J. Leahy and Phil Leahy and his wife, the latter filing disclaimers. From a judgment for first-named defendant, plaintiff appeals. Reversed and remanded for new trial.

Jas. G. Cook, of Sinton, and B. D. Tarlton, of Beeville, for appellant.

H. S. Bonham, of Beeville, for appellee.

COBBS, J. On the 30th day of January, 1923, appellant filed this suit against Phil Leahy and his wife, Cecelia Leahy, and H. J. Leahy, son of the said Phil and Cecelia Leahy. This suit was in the usual form of action in trespass to try title, to recover the title and possession to a certain tract or block of land described as No. 55, containing 100 acres, and for rents and damages for removing wire from the fences, and for tearing down fence posts. Phil Leahy and Cecelia Leahy filed disclaimers, and judgment was entered thereon for appellant, and the suit then proceeded to trial alone as between appellant and appellee. Appellee, in his answer, presented various exceptions to appellant's petition, then pleaded "not guilty," and specially answered by claiming the land by virtue of the title he acquired from his parents by parol gift, by a deed from them, and title acquired by virtue of the statute of limitations of 10 and 20 years. In addition the appellee sought, by crossaction, to recover damages for alleged torts. From the view we take of this case, there is no necessity of incumbering this opinion by setting out other issues than those arising

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under the plea of limitations. The case was submitted to a jury on the one single issue of the statute of limitation of ten years.

[1] Appellant has shown in himself a superior paper title to the land, which would entitle him to recover, unless appellee has established a better title by limitations of ten years, which is held to be a "full title, precluding all claims." Article 5679, R. S.

[2, 3] We lay out of sight any consideration of appellee's claim of title by virtue of the alleged parol gift of the property through the grandparent, Mrs. Ellen Timon to her daughter, Mrs. Cecelia Leahy, the mother of appellee, and any verbal gift thereof to appellee by his said mother to him.

If his mother, Mrs. Cecelia Leahy, and his father, held any sufficient adverse possession of the land by limitations prior to their conveyance to him, their deed to him would put him privy in estate with them, so that his possession would tie to theirs and be continued down to him. Foster v. Guerra (Tex. Civ. App.) 219 S. W. 295. Under article 5676, R. S., it is stated:

"When such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be coextensive with the boundaries specified in such instrument."

But since appellee held under no recorded deed, his right to a recovery must depend solely upon the naked adverse possession for the period of ten years next before the institution of this suit. Any claim he has attempted to assert here, in writing or by parol gift, cannot be considered as vesting title, because of the failure to register it, and by virtue of the statute of frauds in respect to parol gifts of land. But because of the possession of his parents, if there was any adverse possession at all, such as meets the law of limitation, he would by his father's deed be in privy in estate with such possession. Only to that extent would the unrecorded deed be available to him. Foster v. Guerra (Tex. Civ. App.) 219 S. W. 295; Railway v. Speights, 94 Tex. 350, 60 S. W. 659.

[4] There is much testimony pro and con as to his adverse possession under a claim of right for a period of more than ten years. Whatever we may think of the testimony as an original proposition, the jury has found with the appellee, and if there was sufficient material testimony to support their finding, we would not disturb such finding, for we would then find ourselves in conflict with every decision of the appellate courts of this state. While appellant recognizes that rule, he says the testimony itself does not show that absolute claim to title and possession that the law requires, and we are inclined to agree with him. To acquire the title to another man's property, the possession and use must be hostile, adverse, unqualified, and unmistakable to the true owner. The flag raised and planted over the property, so to speak, must not be allowed to dip, but to float continuously. The claim should likewise be continuous and consistent with that possession, so that there be no lisp or word to the contrary during that period allowed to escape, because it would break the possession as a matter of law. There are numerous authorities to this effect.

[5] Appellee claimed that the property was given by his grandmother to his mother, Cecelia Leahy, about the year 1901, and that he managed the same for them as his mother's separate estate. This is the claim from his pleading and his testimony, until September 24, 1912, when he claims to have acquired it from them by their deed, which was neither acknowledged nor registered. Subsequent to the date of the alleged deed there was no apparent change in the possession and management of that property by the appellee. Mrs. Cecelia Leahy testified as a contestant in 1917, in which it was sought to break the will of her mother, Mrs. Ellen Timon, in the district court of Nueces county, in reply to questions propounded to her by her own attorney, as follows:

"Now, Mrs. Leahy, considering the reasons why your mother should have disinherited you, will you please tell what property you received from your mother in her lifetime, and whatever she gave you?"

In response to which she answered:

"She never gave me any property that I remember of; all she gave me when I was down there was a few dollars, and she told me to put it in my bosom so Walter wouldn't see it."

She likewise testified that her children owned no land. That testimony was qualified and explained on this trial, as follows:

"When I testified on that trial that she never gave me anything, I just meant that I had not gotten what she gave to me. That's what I meant; she gave it to me, but I never got it. And this little lot of land I just had forgotten it."

She likewise testified that on September 24, 1912, she "gave everything" to Harry, and appellant testified to the contrary; that he purchased the ranch, including the 100 acres, for a good round consideration of $10 per acre, or for $15,000, represented by obligations which he assumed. Thereafter Phil and Cecelia Leahy asserted title to the land by filing a suit against the United States Bond & Mortgage Company for the cancellation of a mortgage thereon, claiming the title and ownership thereof, as her separate estate, on September 13, 1916, alleging that the money represented by the notes or bonds described in said deed of trust was borrowed on the security of plaintiff Cecelia Leahy's separate property, for the purpose of paying

off debts owing by her husband, Philip Leahy, and that—

"Your plaintiff, Cecelia Leahy, received none of said money, nor was any of said money expended for the benefit of herself, said Mrs. Cecelia Leahy, or for the benefit of her separate estate."

It was further alleged that "title to said property never passed out of plaintiff Cecelia Leahy, and is still vested in her," and that she have a judgment annulling two certain deeds of trust, and the trustee's sale, and deed under a second deed of trust, and that the cloud cast by said instruments on said Cecelia Leahy's said separate estate and property be removed, and that title be declared in her as her separate estate, etc.

Again, that Cecelia Leahy, and her husband, borrowed money from one Mrs. Alma Krook, in the sum of $8,000, giving their joint note therefor, of date March 19, 1914, due 12 months after date, and executing to one V. E. Kessler, as trustee, a deed of trust, dated March 27, 1914, conveying in trust 887.48 acres of the Leahy ranch (being all of the same except their homestead of 200 acres) as their property, being all of farm lots or blocks Nos. 20, 21, 25, 24, 23, 53, 52, south, part of Nos. 19 and 26, and west one-half of No. 56, and the north one-half of No. 54 of the said grant of four leagues to San Patricio de Hibernia, being, as aforesaid, a large portion of the same ranch claimed by H. J. Leahy to have been conveyed to him by deed dated September 24, 1912, by his said parents. The note of $8,000 is borrowed on the credit of Mr. Phil Leahy and Cecelia Leahy, who alone sign the same, of date March 19, 1914, and H. J. Leahy does not even join them in signing the obligation.

And that there is another similar deed of trust from Phil and Cecelia Leahy, of date September 22, 1914, to J. C. Dougherty, trustee, to secure H. J. Timon in a note executed by them jointly (in which H. J. Leahy does not join) to H. J. Timon, of date September 22, 1914, due in one year, for principal sum of $2,418.20, conveying in trust the same Leahy ranch, or 887.48 acres, same as described above in the deed of trust to Kessler, as trustee, for Mrs. Alma Krook. This deed of trust to Dougherty, as trustee, was executed by Phil and Cecelia Leahy, as the owners in fee simple of said ranch, about two years after the day, after the purported conveyance of the same lands to their said son H. J. Leahy.

Again, they borrowed $12,000, represented by a note for said sum to one Jack Locke, trustee, of date June 3, 1915, due two years after date, and executing to said party a deed of trust conveying 1,087.48 acres, or the whole of the Leahy ranch, and all of the property owned by them in San Patricio county (except a town lot in Mathis which they were forced to move upon and designated as a homestead).

It is significant that in none of these instruments is the land in controversy mentioned. Appellee, in March 1917, caused a survey to be made of the Leahy ranch lands for Philip Leahy, which did not include said land in controversy. Appellee signed the field notes as chain carrier. For 20 years Phil Leahy, Cecelia Leahy, nor appellee ever rendered the land for taxes. But H. J. Timon rendered and paid the taxes thereon for Mrs. Ellen Timon, the grandmother. Appellee rendered all the land except the land in controversy for taxes, as the agent of his father. On April 4, 1919, appellee made a rendition, under oath, of his seven ponies, but no rendition of any land. Again, on March 13, 1920, he made a rendition of his property under oath for taxation, but in it shows no land.

[6] His title by limitation to the land in controversy must be determined by the claim of ownership coupled with possession of the entire ranch, for there is no separate and indivisible possession of the land in controversy other than it was included within the boundary of the entire ranch. Of course, payment of taxes on land under the ten-year statute is not necessary to mature title, but may be here looked to under the peculiar facts in this case, as a circumstance in support of the claim of title.

Appellant seeks to defeat the appellee's claim to title by way of estoppel; that is to say, by his acts in the premises, representing his parents as their agent, he cannot here change his position so as to show he claimed ownership and title in himself, while he represented and held himself out to the world to be acting in a fiduciary capacity. Cocke v. Railway, 46 Tex. Civ. App. 363, 103 S. W. 407 (writ refused).

[7, 8] While the defense of estoppel may be set up under the plea of not guilty by a defendant, we are not so sure that a plaintiff can do so without pleading. However, that is not necessary here. Bear in mind a suit in trespass to try title is a possessory action, where all a defendant has to do is to raise the bar to prevent an entry. The defense of limitation is required to be specially pleaded, and no other recovery than that specially pleaded will answer, to defeat the right of entry. The proof of limitation and the issues submitted to the jury for their finding fails to satisfy us.

[9] Property acquired by the wife by limitation, even without her husband's concurrence, is community property, subject to his disposal alone, and his declaration will bind his wife as well as himself. Railway v. Speights, 94 Tex. 350, 60 S. W. 659.

[10] It is significant that the father was not called upon to testify in this case. They disclaimed any title on the trial of this case.

There is no satisfactory proof that the land in controversy was ever adversely held by the parents of appellee under a claim of right independent to the ranch holding. As to that the facts tend to show that appellee, if he was holding it adversely, was holding the property as a trustee or agent for his parents, and such holding was wholly inconsistent with any claim of ownership for himself. Cocke v. Railway, supra.

When appellee and his father were called upon by appellant to set up their claim, so if good appellant might take it up with his grantor for adjustment, the answers were evasive and unsatisfactory, and inconsistent with a claim of title and ownership.

While we have great reluctance in not sustaining the findings of the jury, we do not think this judgment should be allowed to stand.

We think, under the circumstances, that the trial court erred in not granting appellant a new trial.

The judgment of the trial court is reversed, and the cause remanded for another trial.