## R. W. WIER LUMBER CO. v. EAVES. (No. 800–4820.)

Commission of Appeals of Texas, Section B. June 25, 1927.

1. **Adverse possession** ☞96—Adverse possession held to extend only to land in actual possession of claimant, in absence of constructive possession of larger area.

Where adverse claimant of land had done nothing to constitute constructive possession beyond extent of actual possession, possession was not adverse notice of any claim beyond actual possession.

2. **Adverse possession** ☞50—Adverse claimant's letter to owner offering to buy land held acknowledgment of title precluding title by adverse possession.

Adverse claimant *held* not to have acquired title to land under 10-year statute, where he wrote to owner offering to purchase such land prior to expiration of period, since such letter was acknowledgment of owner's title.

3. **Evidence** ☞413—Adverse claimant cannot vary written offer to buy land from owner by parol proof that he intended to exclude land claimed by adverse possession.

Adverse claimant will not be permitted to vary written offer to buy land from owner, which constituted acknowledgment of owner's title, by parol proof that he intended to exclude from such offer land which he claimed by adverse possession.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by the R. W. Wier Lumber Company against Irvan Eaves. Judgment for defendant was affirmed (291 S. W. 337), and plaintiff brings error. Reversed and rendered.

G. E. Richardson, of Jasper, and E. J. Fountain, Jr., and Andrews, Streetman, Logue & Mobley, all of Houston, for plaintiff in error.

Smith & Lanier, of Jasper, for defendant in error.

POWELL, P. J. The nature and result of this case in the trial court have been accurately stated by the Court of Civil Appeals. See 291 S. W. 337. Summarizing the situation, that court speaks as follows:

"Suit in trespass to try title, brought by appellant against appellees, for the William R. Denmore 640-acre survey in Jasper county. Appellees disclaimed as to all of the survey except about 100 acres, which they claimed under the 5 and 10 years' statutes of limitation. The 100 acres constituted a part of a 160-acre tract claimed by appellees, and which lay on the Denmore and Hentz surveys in the proportion of about 100 acres on the Denmore and 60 acres on the Hentz.

"The case was tried to a jury upon the sole issue of 10 years' limitation, which the jury found in favor of appellees, and upon which finding judgment was rendered in their favor. Motion for a new trial was overruled. The case is before us on appeal.

"The Denmore and Hentz were adjoining surveys of 640 acres each, and known as sections 10 and 11 of the Toby Scrip surveys. The 160 acres claimed by appellees lay partly on each of these surveys. The following plat shows the situation of these surveys and the 160 acres claimed by appellees: [Here follows plat.]"

The record title to the entire 640 acres sued for was admittedly in the lumber company. The Court of Civil Appeals affirmed the judgment of the district court. The Supreme Court granted a writ of error upon the "conflicts alleged."

The only possession on the Denmore survey, *prior to 1909*, was a mere encroachment beyond the line of the Hentz survey. The total encroachments aggregated about 10 acres. The primary improvement or dwelling house occupied by these limitation owners was upon the Hentz survey. Only incidental improvements crossed over on the Denmore survey. The Court of Civil Appeals so finds the facts. The acreage in this encroachment is accurately described in the second special charge requested by the lumber company, but refused by the court, reading as follows:

"Gentlemen of the jury, You are instructed to find a verdict in favor of plaintiff and against defendants for the title and possession of the land sued for, save and except the following tract: Beginning at a point on the east line of the William Denmore survey, same being 357 varas north of its southeast cor.; thence south 78° 30′ west 68 varas; thence north 63.° 30′ west 127 varas; thence north 32° east 60 varas; thence north 50° east 91 varas; thence north 10° west 152.7 varas; thence north 43.° 30′ east 144.1 varas, intersect the east line of the said Denmore survey; thence south with the said line 406 varas to the place of beginning."

We think this charge should have been given. We shall state our reasons for this view: (1) As to the 10 acres aforesaid; (2) as to the remaining 90 acres on the Denmore.

[1] Under the undisputed facts in this record, *prior to 1909*, there was nothing whatever to charge the lumber company with notice that Eaves was claiming anything beyond the encroachment of 10 acres. He had that much, and no more, in actual possession. He had done nothing which could constitute constructive possession beyond the extent of his actual possession. Therefore the rule laid down as to encroachments by the Supreme Court of our state in the leading case of Bracken v. Jones, 63 Tex. 184, is applicable. Under the rule there announced, the actual possession in this case was not adverse notice of any claim beyond such possession. However, Eaves did acquire title to the acreage under actual possession long before he wrote the letter to which we shall hereafter refer.

[2] We come now to a discussion of the claim of Eaves as to the 90 acres in the Denmore survey beyond the actual improvements. In *1909*, Eaves began a course of conduct in an effort to bring home to the lumber company notice of the fact that he was claiming an additional 90 acres of its land. Eaves did two things that year. In the first place, he recorded his deed on February 18, 1909. That deed covered 100 acres in the Denmore. In the second place, in *1909*, he told Wier that he claimed the 100 acres and says that he sold Wier the timber thereon. And, after such actual notice to Wier of the extent of the Eaves claim, Wier would have lost the entire 100 acres had he permitted 10 years to elapse before entering suit therefor, except for the fact that Eaves wrote the following letter to Wier:

"June 12, 1918.

"Mr. R. W. Wier, Houston, Texas—Dear Sir: Will write in regards of purchasing some land. I would like to buy section No. 10, the W. M. Denmore survey and section No. 4. Will you please write me. The prices of both section of land. Yours truly, Irvan Eaves, Texla, Tex."

This letter was written in less than ten years after the Eaves deed was recorded and in less than ten years after the sale of this timber by Eaves to Wier. It is undisputed that Wier repudiated his alleged purchase of this timber and that Eaves made no effort to enforce payment therefor. Instead of doing the latter, Eaves wrote aforesaid letter to Wier. If that letter was an acknowledgment of Wier's title to the Denmore, then he (Eaves) has no claim to the 90 acres under the 10-year limitation theory. We think this letter is such an acknowledgment.

The letter was an offer to buy. It contained no reason for the offer. That being true, the only reasonable one which could be read into the letter by implication is that Eaves was trying to buy it from its owner. People are not in the habit of buying things from others than their owners. That an unconditional offer to buy, such as we have in the case at bar, is an acknowledgment of title in the person to whom the offer is made, is the well-settled rule in this state. See Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24; T. & N. O. R. R. Co. v. Speights, 94 Tex. 350, 60 S. W. 659; Schleicher v. Gatlin, 85 Tex. 270, 20 S. W. 120; Houston Oil Co. v. Pullen (Tex. Com. App) 272 S. W. 439.

[3] But it is contended that Eaves, in writing this letter, *intended* to offer to purchase only a *part* of the Denmore. But he did not so state in the letter. He offered to buy section 10—the entire 640-acre Denmore survey. He will not be permitted to *vary* his written offer by this parol proof that he *intended* to write something else. Wier did not have the benefit of his undisclosed intention. He was lulled into a sense of security by this letter when he yet had ample time to file suit and stop the limitation claim. He had a right to impute to Eaves an intention to write just what he did write in clear and unambiguous language. We discussed a similar question very fully in the very recent case of Houston Oil Co. v. Pullen, supra.

We must sustain the company's assignment of error complaining of the refusal of the trial court to give its special charge No. 2.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed and judgment be rendered by the Supreme Court in favor of plaintiff in error for all the land sued for by it herein, save and except the few acres described in its aforesaid special charge No. 2, and that judgment be rendered here in favor of defendant in error for those few acres.

We further recommend that the costs in the Court of Civil Appeals and Supreme Court be assessed against the defendant in error and those in the district court against the plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered in part for plaintiff in error and in part for the defendant in error, as recommended by the Commission of Appeals.