We find no reversible error reflected in this bill.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

### GALINDO v. ALEXANDER et al.
#### No. 12375.

Court of Civil Appeals of Texas.
San Antonio.

April 9, 1952.

Rehearing Denied May 7, 1952.

Lloyd & Lloyd, Alice, for appellant.

Perkins, Floyd & Davis, Alice, for appellees.

POPE, Justice.

Appellees commenced this trespass to try title suit against appellant, Galindo, who defended on the grounds that he and his predecessors had matured title by adverse possession under the ten-year statute of limitations. A jury made favorable findings in support of the limitation plea, but the court rendered judgment notwithstanding the verdict. That judgment should be affirmed if the evidence shows that Galindo and his predecessors were permissive tenants, since they never gave sufficient notice of an adverse claim. The judgment should be affirmed even though they were not permissive tenants, if their claim was not shown to be hostile. The nature and quality of the claim depends upon whether certain words in a deed from Galindo's grantors were conclusive against the grantors' assertion of the necessary hostile claim.

Galindo claims through and under Rafael Saenz and wife, who put him in possession of the land in June of 1943. The jury found that Galindo and his predecessors, Rafael Saenz and wife, had matured limitation title for a ten-year period prior to July 25, 1949. It found also that Rafael Saenz and wife had matured another ten-year limitation period of adverse possession prior to February, 1944. These are the findings that the court set aside. It is apparent that Galindo, if he can prove adverse possession, must rely upon a claim that was hostile on the part of Mr. and Mrs. Saenz, his grantors.

The dispute concerns 111 acres of land out of what is known as the "surplus tract." That tract is bounded on the east by a large ranch owned by appellees. Immediately to the east of the surplus tract, a part of appellees' ranch, is a long strip of land running from north to south, known as Share 1 out of the Palo Blanco Grant. The surplus tract is bounded on the west by another long strip of land also running from north to south, known as Share 6 out of the Palo Blanco Grant. All these tracts are out of the same grant and derive their names from designations assigned them in a partition proceeding in 1905. The partition decree set Share 1, east of the surplus tract, over to appellees' predecessors, and set Share 6, west of the surplus tract, over to Francisco Sanez Pena. In the partition proceedings, the surplus tract between those two shares was found to be sandy and valueless, and for that reason the court ordered it sold. The surplus tract was sold by the sheriff to the then owners of Share 1, so that appellees' predecessors then owned both the surplus tract and Share 1.

The evidence showed that before the partition proceedings were completed, and several years before the sale of the surplus tract as a part of those proceedings, some of the co-tenants owning the Palo Blanco Grant, met at a water-hole known as San Pedro Charco Redondo, located on the property. They butchered a sheep, spent the day, and walked over the sand dunes located on the surplus tract. They concluded that a fence could not be constructed across the sand dunes, and the jury in this case found that the owners of the several tracts then agreed that a fence would be built so as to skirt the dunes on the east and that the fence would later be moved to the true boundary when the dunes disappeared. A fence was built to the east of the dunes with the result that

the disputed tract was included within the pasture of Share 6, which several years later by the partition decree was awarded to Francisco Saenz Pena. Neither Pena, in whose pasture the disputed tract was located, nor his heirs, were present at the meeting at San Pedro Charco Redondo. Other owners were not present. A permissive tenancy does not arise from an agreement to which neither the claimant nor any of his predecessors are parties. A single witness told of the agreement and he stated that during all the intervening years he had kept it a secret from the record owners as well as the claimants to the disputed tract.

Francisco Saenz Pena died in 1906 after the partition proceedings, including the sale of the surplus tract, were fully closed. He was survived by six children, one of whom was Rafael Saenz, under whom Galindo claims the disputed acreage either by deed or privity of possession. After their father's death, Rafael, his brothers and sisters took possession of and jointly used Share 6, which they inherited, as undivided owners. They grazed stock upon it, and since there was no fence dividing their Share 6 from the disputed portion of the surplus tract, they used it also. In 1910 Rafael married and he and his wife then began living in an old house that formerly belonged to his father. About a year later he built a small house on the disputed surplus tract. He dug a well and equipped it with a pump. He erected corrals and kept cattle, horses, mules and chickens on the land. He and his wife tilled a small field where they raised cotton, corn and cane for about five years. These operations continued unmolested until about 1919 when they determined that they could no longer fight the onsloughts of the sand, and they moved their home to a place about two miles from the disputed tract. They had already given up their farming operations on the land, but they never ceased to use the land for grazing, which under the evidence was the use for which it was suited. During all of thirty-eight years the tract was used for grazing, and for almost fifty years it was fenced on the east and south, so that it was excluded from the pasture of the record owner, and included with Share 6. The fences were maintained in good repair, capable of turning livestock, but in 1947 appellees commenced a fence along the west line of the surplus tract and that precipitated this suit.

■ It is urged that the possession was in subordination to the partition decree and was a permissive tenancy. The evidence fails to show sufficient notice to the record owners that an adverse claim was asserted, and such notice is necessary to change an inceptively permissive use into a hostile use. Robinson v. Smith, 133 Tex. 378, 128 S.W.2d 27; Brown v. Bickford, Tex.Civ.App., 237 S.W.2d 763; West Lumber Co. v. Sanders, Tex.Civ.App., 225 S. W. 828; 2 C.J.S., Adverse Possession, § 87b(3) (a). But the possession in this case was not permissive in its inception. The record fails to show that Francisco Saenz Pena ever occupied the surplus tract at any time after the 1905 partition decree. The record fails to show that he possessed the property at all. After the partition, including the sale of the surplus tract, and after Francisco Saenz Pena's death, his children used the surplus tract along with their Share 6. But, so far as this record shows, Pena, the father, fully respected the partition decree. Hence, instead of his being a permissive tenant, Francisco Pena was not an occupant at all.

If Francisco Saenz Pena was not an occupant, certainly his son Rafael could not continue any claim based on Pena's occupancy. When Rafael commenced using the surplus tract, rather than continuing his father's claim, which did not exist, he originated an occupancy and possession. A continuation of possession after judgment may be in subordination to the judgment, but an original entry following judgment is in the face of the judgment. Though he inherited his undivided interest in Share 6, he made no character of claim through his father to the separate and different tract known as the surplus tract. Under the evidence, Rafael's entry upon the surplus tract was not in the role of a permissive tenant, but as an original occupant.

However, the trial court correctly entered judgment notwithstanding the verdict

because of the evidence that Saenz and his wife did not assert a claim that was hostile. The jury found that adverse possession was proved for two different periods of time. Each of those periods included a space of time during which Saenz and his wife must have asserted a claim that was hostile. At least five different witnesses, including Galindo, one of the actual occupants, and Saenz's widow, who was one of the grantors, testified about the adverse nature of the claim. Their evidence would support a fact finding even if their testimony conflicted. Rose v. O'Keefe, Tex. Com.App., 39 S.W.2d 877; Aetna Ins. Co. v. English, Tex.Civ.App., 204 S.W.2d 850, 851; Walker County Lumber Company v. Sweet, Tex.Civ.App., 40 S.W.2d 225; Funk v. Miller, Tex.Civ.App., 142 S.W. 24.

But in the face of this strong evidence, no jury question was raised, inasmuch as Mr. and Mrs. Saenz themselves professed the total absence of a claim to the surplus tract by their deed to Galindo. Galindo introduced in evidence the deed from Saenz and his wife. The deed described and conveyed two tracts out of the Palo Blanco Grant. The first tract was described as containing 110 acres out of Share 6, and concluded with the statement that it was the intention "to convey all the land we own or *claim* in said share received by us by inheritance or purchase." The second tract was described as containing 50 acres out of Share 11 of the same grant, and concluded with the statement: "and the two tracts of land being all they own or *claim* in the said Palo Blanco Grant, all interest they own in said grant being hereby conveyed."

The statements in the deed amount to an assertion of an ownership and claim to two described tracts of land totalling only 160 acres of land and a denial of any more extensive claim. It was an express documentary statement to Galindo by his grantors that 160 acres were included in the deed and the claim, and that nothing more was owned or claimed by those grantors. The addition of the word "claim" in the deed is significant. If something more were claimed, then the two tracts could not be all; and the grantors said that the two

tracts were all they owned or claimed. Unlike the authorities cited by appellants, the description in the Saenz deed was a limitation on the property conveyed rather than an enlargement.

We think the unambiguous, unexplained, unmodified, and positive denial of a claim in the Saenz deed to Galindo is controlling evidence that Saenz and his wife made no claim such as was necessary to mature title. Whether Saenz and his wife made the statement and whether they meant what they said, is not disputed and these matters are not questions of fact. Farr v. Kirby Lumber Corporation, Tex.Civ.App., 203 S.W.2d 815. There was no showing of mistake. O'Connor v. Presswood, Tex. Civ.App., 76 S.W.2d 799. Since Saenz and his wife declared that they never raised their flag, others will not be heard to say that Mr. and Mrs. Saenz kept it flying and the declaration of no claim left nothing on which Galindo or any other person could tack.

█ We have previously held that an affidavit to a tax rendition that stated an inventory included all the taxpayer's taxable property, raised a jury question on whether other property was claimed by limitations. Parr v. Rattiseau, Tex.Civ.App., 236 S.W.2d 503. Unmatured title to property being claimed under the ten-year limitation statute is not necessarily taxable property. But the case of a grantee who must tack upon a grantor who disavows any adverse claim, is quite different. Slight evidence will support a fact finding that there was no claim. Warren v. Fredericks, 83 Tex. 380, 18 S.W. 750; Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81; Allen v. Sharp, Tex.Civ.App., 233 S.W.2d 485. But where, as here, there is a clear disaffirmance of a claim by the ones who must assert it, that as a matter of law establishes the absence of an adverse or hostile claim. Houston Oil Co. v. Pullen, Tex.Com.App., 272 S.W. 439; R. W. Wier Lumber Co. v. Eaves, Tex.Com.App., 296 S.W. 481; McMurrey v. Lampkins, Tex. Civ.App., 47 S.W.2d 851; Easterling v. Murphey, Tex.Civ.App., 11 S.W.2d 329; Smith v. Wood, Tex.Civ.App., 229 S.W. 583; Whitaker v. Thayer, 38 Tex.Civ.App.

537, 86 S.W. 364; Texas & N. R. Co. v. Speights, 94 Tex. 350, 60 S.W. 659; Allison v. Groppenbacher, Tex.Civ.App., 142 S.W.2d 528; Johnson v. Martinez, Tex. Civ.App., 18 S.W.2d 925. "Of all persons, he is the only one in a position to declare the truth as a fact." Thompson v. Moor, Tex.Com.App., 14 S.W.2d 803, 804.

Since Saenz and his wife knew when they conveyed their property in 1943 whether they asserted a hostile claim to, or maintained a mere naked use of other lands in the Palo Blanco Grant, and since they by a clear statement in their deed to their grantee professed the total absence of any claim beyond their ownership in Share 6 and Share 11, we think the necessary hostility in the claim by Saenz and wife is not proved. But for the effect of the Saenz disclaimer, we would reverse the case. Since we think the disclaimer is controlling, the necessary hostile claim was not proved.

The judgment is affirmed.