MORRISON v. O'HANLON.  (No. 1308.)

(Court of Civil Appeals of Texas. Amarillo. March 20, 1918.)

1. ADVERSE POSSESSION &#8666;85(3) — CLAIM OF OWNERSHIP.

A claim of ownership of land, to give rise to a title by limitation, must be open and a distinct claim of ownership, and the mere assertion by an occupant that he might as well have the land as another is not the assertion of an exclusive hostile right or title.

2. ADVERSE POSSESSION &#8666;94 — PAYMENT OF TAXES—MISTAKE.

A party is charged with what his deed calls for, and where he makes a mistake in paying taxes on one lot instead of another this will not aid him in acquiring adverse possession of the lot on which he meant to pay taxes.

3. ADVERSE POSSESSION &#8666;60(4) — SUBORDINATE POSSESSION — CHANGE IN CHARACTER.

Where an occupant of land took possession in subordination to a better title, having so entered, he was required thereafter to change the character of his possession, and make it of such character as to indicate unmistakably an assertion of claim of exclusive possession in him, if he sought title by limitation.

4. ADVERSE POSSESSION &#8666;79(1)—BREAKING OF SEISIN—TAX DEED.

A tax deed covering land of which an occupant held possession in subordination to the title of the true owner conveyed the title and interest which the occupant possessed, and in effect broke the seisin which he had up to that time, so that, to establish title in himself, he must do so under 10 years' adverse possession after the tax deed.

5. PROPERTY &#8666;10—"SEISIN IN LAW."

Seisin in law is constituted by the formal making and recording of a deed, and the seisin of the land is effected without a formal entry.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seisin in Law.]

Appeal from District Court, Grayson County; C. T. Freeman, Judge.

Suit by F. L. O'Hanlon against W. A. Morrison. From a judgment for plaintiff, defendant appeals. Affirmed.

Cox & Cox and Wood, Jones & Hassell, all of Sherman, for appellant. J. W. Finley, of Sherman, for appellee.

HUFF, C. J. This is the second appeal of this case, and this time from an instructed verdict. The former appeal is reported in 187 S. W. 692, to which reference is made for a more detailed statement of the case. The record in some particulars of this appeal differs from the former; however, the only question remaining is whether Morrison at the institution of the suit by O'Hanlon had title by limitation, either by the three or ten year statute, to lot 3, in block 41, College Park addition to Sherman, Tex., and whether there is any evidence that would have supported a verdict to this effect. In part, to support the claim of limitation, the appellant relied upon a tax deed from the city of Sherman to J. W. Hollingsworth, who, it may be stated, bought the property and took the deed in his own name for the use and benefit of Morrison, and thereafter made a deed to Morrison for the lot, which deed, however, was never recorded and the evidence in this case shows was lost and a substitute deed executed therefor in 1914. The tax sale was for the taxes for the year 1903 on March 1, 1904. After this year, the year 1905, the land was again sold for the taxes of 1904, and at that sale appellee, O'Hanlon, became the purchaser, but thereafter deeded the land to one of his vendors, which shows in the chain of title, whose interest and that of others he subsequently purchased, placing the fee-simple title to the land in O'Hanlon as shown by the record at the time of his suit. It was practically admitted upon the trial that the tax sale to Hollingsworth in 1904 was made in accordance with law, and that the necessary precedent requirements authorizing such sale had been complied with; and it was also admitted that the sale in 1905, at which O'Hanlon became a purchaser, was likewise valid.

It is manifest under the agreement, if the tax sale in 1904 put the title in Morrison, subject to be redeemed, that the sale for the taxes of 1904, which was made in 1905, conveyed whatever title or color of title Morrison had out of him into O'Hanlon. He was therefore remitted to his claim of title by limitation. On the former appeal Morrison testified he asserted no claim of title until 1904 under his tax deed. On the last trial he testified he claimed title to the lot in 1900 and 1901, and one or two witnesses testified he so claimed to them and asserted that it was his lot. One of the witnesses testified that Morrison told him he could not find the owner of the lot and that he might as well have it as anybody. It is admitted by Morrison that he was trying to find the owner to the lot for some time, from 1898 up until 1901; the testimony not being very definite as to the time. During the time he was looking for the owner he was staking his cow and horse on the lot to graze through the summer. He placed lumber thereon, his mower, wagon, and buggy; in fact, all the evidence of the possession that he ever exercised over the lot were the same before he made any claim of title as they were afterwards. The evidence shows that other

people used the lot for grazing purposes as he did, but he says without his permission. He does not appear to have objected· unless at one time, and that was through his brother-in-law. The lot was open to the commons, unfenced, and with no improvements on it until about two years before this suit was filed, when he fenced it. Until that time there had been no open, visible assertion of ownership, or such that would give notice that he was asserting title hostile to the true owner, or that he had changed his attitude to the true owner from that which existed when he first began to use the lot. His acts afterwards were as they had been previous thereto, while admitting ownership in another.

[1] The mere fact that he asserted that he might as .well have it as another does not show that he asserted any exclusive hostile right or title. If he asserted ownership in himself to one or two he also admits that he during that time was trying to find the owner ; he could not blow both hot and cold. His claim of ownership must be open and a distinct claim of ownership. He did not pay taxes on this lot. ·He says he paid on lot 4 by mistake in the redition. He certainly knew the number of the lot he purchased at tax sale. Lot 4 was immediately back of him and across the alley. The extension of his north and south lines form the north and south lines of lot 4. Lot 3 was north of lot 4. The evidence indicates that he was claiming 4 instead of 3.

[2] A party is charged with what his deed calls for, and we can see no reason why he should have made the mistake in paying on lot 4 instead of lot 3. He permitted lot 3 to sell for the taxes due for the year in which he says he purchased it. He never tried to redeem it or pay the taxes for that year. We can find no evidence or fact which would have justified a jury in finding that he asserted or had hostile possession of the lot, such as can be said to have been exclusive; adverse, visible, and such as would notify the owner ·that it was so held until he put his fence around the lot about two years before the suit was instituted. The appellee herein has a regular chain of transfers from and under the sovereignty of the soil, as well as a conveyance of any title or claim which appellant had by virtue of his tax deed or previous occupancy. This interest was purchased in 1905, less than 10 years before the filing of

the suit, August 27, 1914; therefore there could have been no 10 years' possession from such purchase. The possession, if in fact it was· such, when Morrison began using the lot, was in subordination to the better title, as he himself admits.

[3] Having so entered he was· required thereafter to change the character of his possession and make it of such character as to indicate unmistakably an assertion of claim of exclusive ownership in him. The character of possession was not changed from what it was when holding admittedly in subordination to the true owner. The only change in this record from what it was on the former appeal is that he now says he claimed title before the tax deed and told others that he did so. His brother-in-law testified that he said he might as well have it as another, and this did not assert a claim of title in himself; on the contrary, it recognized the right of others. In our judgment, he has only shown that he was a mere casual trespasser on the lot, without objection from the owner or by permission of the owner. We believe that the view as expressed by this court on the former appeal is supported by the authorities cited therein. Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24; Satterwhite v. Rosser, 61 Tex. 166; Buford v. Wasson, ·49 Tex. Civ. App. 454, 109 S. W. 275, and the other cases therein cited.

[4, 5] If our former opinion was correct, the trial court correctly instructed a verdict; and, in addition to the former appeal and record, we think the tax deed of 1905 to appellee conveyed the title and interest which appellant then possessed, and in effect broke the seisin of appellant which he had up to that time, and in order to recover he must do so under 10 years' adverse possession after that date, which period had not been filled when this suit was filed. As a general proposition, seisin in law, by the holdings in this country, is constituted by the formal making and recording of a deed, and the seisin of the land is effected without a formal entry. See Seisin, Rawls' 3d Revision, Bouvier's Law Dict. vol. 3, p. 3036; Collier v. Couts, 92 Tex. 234, 47 S. W. 525.

We think the tax collector's deed, when executed, conveyed for appellant all his title and interest, as well as his seisin of the land to appellee.

We believe the judgment should be affirmed.