EVANS et ux. v. HOUSTON OIL CO. OF
TEXAS et al.  (No. 445.)

(Court of Civil Appeals of Texas. Beaumont.
April 5, 1919. Dissenting Opinions, April
14 and 15, 1919. Rehearing Denied April
30, 1919.)

1. APPEAL AND ERROR ☞759—ASSIGNMENT
OF ERROR—COPYING INTO BRIEF—RULE OF
COURT.

An assignment of error not copied into the
brief, as required by rule 29 for the Courts of
Civil Appeals (142 S. W. x), cannot be consid-
ered.

2. APPEAL. AND ERROR ☞301—ASSIGNMENT
OF ERROR—FAILURE TO RAISE IN MOTION
FOR NEW TRIAL.

An assignment of error which was not rais-
ed either in the motion for new trial or in
any assignments filed in the trial court, but as
copied in the brief is merely a quotation from
a bill of exceptions shown in the transcript,
cannot be considered.

3. APPEAL AND ERROR ☞742(1) — ASSIGN-
MENTS OF ERROR—ABANDONMENT—ABSENCE
OF STATEMENT.

Assignments of error under which no state-
ment is given, as required by rule 29 for the
Courts of Civil Appeals (142 S. W. x), will be
regarded as abandoned.

4. ADVERSE POSSESSION ☞60(2)—PERMISSIVE
ENTRY AND OCCUPANCY.

Where entry on land and occupancy there-
after was permissive, at the request of the
representative of the owner, and not adverse,
the possession gives rise to no title by virtue of
the 10-year statute.

5. ADVERSE POSSESSION ☞47—LIMITATIONS
—ENTRY AS INTERRUPTING STATUTORY PE-
RIOD.

Where the owner of land entered and cut
and removed all of the timber, the entry was
sufficient to restrict any adverse occupiers to
their inclosures, and to stop the running of
the 10-year statute of limitations in their fa-
vor, since where the true owner is in posses-
sion, though only to cut timber, he is in posses-
sion of all the land not actually inclosed.

6. APPEAL AND ERROR ☞854(5)—PRESUMP-
TION FAVORING COURT BELOW—DIRECTION
OF VERDICT.

If the verdict and judgment in a suit to re-
cover land are proper, the action of the trial
court should be affirmed, though the reason as-
signed by the trial judge in directing the verdict
was insufficient.

Walker, J., dissenting, and Hightower, C. J.,
dissenting in part.

Appeal from District Court, Tyler County;
J. Llewellyn, Judge.

Suit by Jubal Evans and wife against the
Houston Oil Company of Texas and others.
From judgment for defendants, plaintiffs ap-
peal. Affirmed.

Coleman & Lowe, of Woodville, for appel-
lants.

Kennerly, Williams, Lee & Hill, of Hous-
ton, for appellees.

BROOKE, J.  [1-3] It is well to state, at
the outset, that this court cannot consider
appellants' assignments of error from the
second to the seventh, inclusive, for the rea-
son that they are subject to the objections
urged thereto by appellees. The second as-
signment is objected to because the same is
not copied into the brief, as required by rule
29 for Courts of Civil Appeals (142 S. W. x).
With reference to the third assignment, it is
objected that neither in the motion for a new
trial, nor in any assignments filed in the
trial court, was such an assignment raised;
the assignment as copied in the brief being
merely a quotation from a bill of exceptions
shown on page 29 of the transcript, which
was never filed as an assignment of error,
nor contained in the motion for new trial
filed in the trial court. And, as to the other
assignments mentioned above, it is urged
that these assignments should be regarded as
abandoned, and appellees object to their con-
sideration, for the reason that no statement
is given thereunder. See rule 29, governing
Courts of Civil Appeals, and Harris' Anno-
tated Rules of Courts, p. 29, and authorities
cited thereunder. This opinion, therefore,
will only consider the first assignment of er-
ror.

The facts, as shown by the record in this
case, are as follows:

Appellants sued appellees for an undivided
160 acres out of the William S. Brown sur-
vey in Tyler county, claiming that they had
acquired title thereto under the ten years'
statute of limitation. It was agreed that
the appellees owned all of the land, unless
appellants had acquired title under the ten
years' statute. The court instructed the
jury to return a verdict in favor of the ap-
pellees, and judgment was rendered therein
in appellees' favor.

The judgment in this case must be affirm-
ed for the following reasons:

[4] (1) That the undisputed testimony
showed that the appellants entered and re-
sided on the land at the special instance and
request of the representative of the Reliance
Lumber Company, the owner of the land, so
that their entry in 1887 and occupancy there-
after was permissible and not adverse.

(2) Because in 1892 appellants entered
into an oral agreement with the agent of the
Reliance Lumber Company to purchase a
part of the Brown survey, and in 1893 ac-
cepted a deed conveying said land to them;
hence they acknowledged and recognized the
title of the company.

[5] (3) Because in 1899 or 1900 the owner
of the land entered thereon and cut and re-

moved all of the timber therefrom; such entry being sufficient to stop the running of the statute, even if the possession had been adverse theretofore, which it was not.

Appellants' first assignment of error is as follows:

"The court erred in instructing the jury to return a verdict in favor of the defendants, on the theory that the plaintiffs recognized the title of the defendants by purchasing a portion of the Brown 960-acre survey, in 1893, because the undisputed evidence shows that the plaintiff entered upon and set up a claim to the land sued for in the year 1887, or at latest in the latter part of the year 1888, and therefore the statute of limitation, upon which plaintiff relied for recovery, was set in operation prior to the time the plaintiff made any purchase of any portion of the Brown survey, and the fact that plaintiff Jubal Evans did purchase a portion of said survey which was not in conflict with the portion he was at that time claiming and asserting title to would not, as a matter of law, stop the running of the statute of limitation to the tract in controversy in this suit; the most under the decisions of the courts of this state, that said purchase could do, would be to operate as a circumstance against the adverseness of his claim, which the jury were entitled to consider, along with the other evidence, in determining whether the plaintiffs' claim was in fact adverse. And for this reason the plaintiff asks that the verdict of the jury be set aside as well as the judgment of the court."

Under this assignment, there are two propositions, viz.:

(a) "The undisputed evidence in this case shows that appellants entered upon the land in controversy and set up a claim thereto in the year 1887, and that they cultivated, used, and enjoyed it, claiming 160 acres as their own, until and including the year 1904, at which time their possession and claim had long before ripened into a good and perfect title, and the fact that in 1893 appellants bought 160 acres off the east end of the 960-acre survey did not, as a matter of law, stop the running of the statute of limitations to the 160 acres in controversy in this suit on the west end of said survey."

(b) "The evidence in this case raised the issue of fact as to whether the appellant had adverse possession of and claimed the 160 acres of land in controversy in this suit for ten years before suit was filed, which issue of fact the court should have submitted to the jury under a proper charge."

The record reflects that on March 24, 1877, one David Miller conveyed by deed to the Reliance Lumber Company all of the William S. Brown survey in controversy. The appellants moved onto this survey at the request of and with the permission of one Hester, who was woods foreman and agent of the Reliance Lumber Company; the appellant J. Evans, himself, testifying to the following:

"In 1887 Hester came up and built that little board house, and I come up and occupied the house myself. Hester was logging there. * * * He was just running the camp there for the Reliance Lumber Company. He was the woods foreman. * * * He was working the timber on the Brown survey and running it down for them, the Reliance Lumber Company.

"Hester was their agent up there attending to their business.

"I explained to you how I happened to first go up on that 160 acres that I afterwards bought. He (Hester) was working for the Reliance Lumber Company, and he was working there for them, and he went up there and built a house, and asked me to take care of his men that were working, some eight or ten men. That was the way I happened to go up there. These men paid me board directly.

"At that time he (Hester) was logging and running timber down the creek for the Reliance Lumber Company. We moved up there and built a house for a camp house. I kept the men. They boarded with me. He built the house on the Brown survey there. He says, 'Maybe it will be that you can get this when we leave here.'

"We just kept living there, and after a while he (Hester) pulled up his teams and went to logging on Thouvenin creek. He went down there to log and wanted me to go with him. I told him, no, I would stay there. I would cultivate my field down there and go backwards and forwards to work. It was only some three or four miles, maybe four miles, and I just kept staying there and staying, and he finally says, after I had been there some four or five years, I don't know exactly how long, he said, 'You can buy this piece of land from the Reliance Lumber Company now by letting them have the timber,' and I says, 'Well, maybe I can,' so he worked up the deal for us, and I bought the place. Most of my negotiations were made through Mr. Hester."

Further:

"I moved on that survey (William S. Brown) in June, 1887. I did not own 160 acres there at that time. * * * I lived on that survey of land about 16 or 17 years. I went in about 1887 and lived there in 1903 or 1904. * * * I never did have it exactly surveyed out. It was 12 acres, perhaps 15. * * * I claimed 160 acres there around that field from the field on down to the creek, claimed 160 acres to be surveyed off to include the field. * * * I hired a fellow to clear it in 1887, in fall, three acres. I claimed that in the summer like. We were logging right next to it, and I says to the boys, 'I will be cultivating this next year,' so I got him to clear the three acres, and he left, and, after the camp moved away from this, I set to clearing it at that time myself. * * * I put in five acres that I put in and cultivated the first year. * * * I cultivated that land every year * * * from 1887 to 1903. There was not a year between 1887 and 1903 that I did not cultivate that field. I claimed 160 acres of that land each and every year."

It was agreed that the Reliance Lumber Company was the owner of the land; that it conveyed the land in 1894 to the Village Mills Company, which conveyed it to the Houston Oil Company of Texas on January 3, 1902,

from whom the other defendants in the case acquired an interest in the property.

The Reliance Lumber Company, on September 9, 1893, by deed, conveyed to the appellant J. Evans a tract of 160 acres of land out of said William S. Brown survey, warranting the title thereto, but reserving all of the merchantable timber thereon. The appellant J. Evans testified: That he made the trade for this 160 acres conveyed by the deed about a year before he got the deed. That he made the trade with Hester for the land. That, "as soon as he said he could get it for me, I made a payment. That was about a year before I got the deed. * * * That made it about 1892 when the deal was on between me and him." He further testified:

"I asked Mr. Hester to see if he could purchase a piece of land there for me. It was narrated around that the Reliance Lumber Company owned that piece of land there. I had saved up some money. I went to paying on it right straight. I paid it to Hester.

"I worked it out and paid Hester. That was the way I paid for the same. I never wrote him myself a check or handed him the money. I just simply worked it out. I got the deed, and I still owed him some on the land; but you see Hester was my wife's uncle, by marriage, and he did not mind totin' me over. * * * When I wanted to buy the land, Mr. Hester said he would see the Reliance Lumber Company. He said they were willing to sell it to me. I finally got it. You see they gave the deed, and then they held it a long time, and they gave a clearance. I got the clearance from them on this land after they cut the timber."

In 1901 the "clearance" or release of timber rights to J. Evans was executed by the Village Mills Company, the then owner of the land, as is shown by that instrument. Evans further testified:

"I worked for the Village Mills Company. They cut the timber on the place. * * * It was in 1900 or 1901, I am not real positive, that they cut the timber on the land out where I live; 1900, I think. It was in 1900 that they put the little road up around my field. It was 1900 or 1901, I am not positive which, but they just run a little switch and cut the timber, and then right out."

[6] In our judgment, if the verdict and judgment are proper, the action of the trial court should be affirmed, though the reason assigned by the trial judge in directing the verdict should not be deemed sufficient.

Appellants lived on the land until 1904, according to the testimony of appellant J. Evans. In the fall of 1887, they cleared a small field west of their residence near the creek, and from that time on appellant J. Evans states that he claimed 160 acres to include the field, which he cultivated every year from 1887 to 1903. After Hester and his men quit logging and left the Brown survey, appellant J. Evans spoke to Hester about buying a tract of 160 acres off of the east end of the survey, near their residence, which Hester advised him the Reliance Lumber Company was willing to sell. Appellant J. Evans pointed out the tract to Hester, which was later surveyed out. A deed was executed in September, 1893, and delivered to appellant by the Reliance Lumber Company, conveying the 160 acres to them. However, the Reliance Lumber Company reserved all of the timber on the land, with the right of ingress and egress for the purpose of removing it. As already stated, appellant J. Evans began negotiating with Hester for the 160 acres that he bought some time in 1892, about a year before the deed was executed. At the time appellants made their first payment on the land, it had never been surveyed out nor deeded to him. At the time appellants bought the land, the Reliance Lumber Company owned it. In 1894, the Reliance Lumber Company conveyed all of this survey to the Village Mills Company. In 1899, 1900, or 1901, the Village Mills Company, the then owner of the land, entered upon the Brown survey, and cut and removed all of the timber therefrom. The tramroad of the company was placed on the Brown survey, near appellants' house, in March or April, 1900, and remained there about a year. The appellant and his family have not occupied any of the land in controversy since 1904.

In our judgment, appellants' possession was begun with and by the consent and request of the agent of the Reliance Lumber Company, the owner of the land, and therefore such possession, at its inception, was not adverse nor hostile to the title and claim of the Reliance Lumber Company. Possession by permission or license from the true owner or his agent is not adverse, and cannot ripen into title, no matter how inclusive or how long continued. Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24; Evans v. Belocher, 83 Tex. 612, 19 S. W. 158; Ferrell v. Delano, 144 S. W. 1039; Craver v. Ragon, 110 S. W. 489; Chance v. Branch, 58 Tex. 490; Satterwhite v. Rosser, 61 Tex. 172; Craig v. Cartwright, 65 Tex. 424; Portis v. Hill, 3 Tex. 279; Ft. Worth v. Rosen, 203 S. W. 84; Morrison v. O'Hanlon, 202 S. W. 97.

The agreement by appellants to purchase the land from the Reliance Lumber Company, which then owned it, and their acceptance of the deed conveying the land to them, was an acknowledgment by them of the title of the owner, which took from their possession any adverse character. Whitaker v. Thayer, 38 Tex. Civ. App. 537, 86 S. W. 364; Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24; Bracken v. Jones, 63 Tex. 184; Converse v. Ringer, 6 Tex. Civ. App. 51, 24 S. W. 705; Cueller v. De Witt, 5 Tex. Civ. App. 568, 24 S. W. 671; Cook v. Knott, 28 Tex. 85; Railway Co. v. Speights, 94 Tex. 355, 60 S. W. 659.

About seven years after the execution and acceptance of the deed, as above stated, the Village Mills Company, which, in 1894, had purchased the land from the Reliance Lumber Company entered upon the Brown survey with its tramroad and employés and cut and removed all of the timber therefrom. It was engaged in logging from the Brown survey, and kept its road thereon something more than a year, according to the testimony of the appellant J. Evans. This entry of the owner of the land was sufficient to restrict the appellants to their inclosures, if their possession had been adverse. The case of South Texas Development Co. v. Brown Manning, 177 S. W. 999, lays down the correct rule, that, where the true owner is in possession of his land for the purpose only of cutting timber, he is in possession of all of the tract not actually inclosed.

Therefore, in our judgment, no title was acquired under the ten years' statute of limitation, for, from June, 1887, until 1893, their possession was by and with the consent of the Reliance Lumber Company and its agent, Hester; in 1892, by their oral agreement to purchase, and in 1893 by accepting the deed to them, the appellants again recognized the title and ownership of the Reliance Lumber Company. In 1900 the owner of the land entered thereon and removed the timber, which entry restricted appellants to their inclosures if their possession had been adverse, and, in our judgment, the facts show, unquestionably, it was not.

Having considered all matters presented for our determination, we are of opinion that there was no error committed by the trial court; and the judgment, therefore, is in all things affirmed.

WALKER, J. (dissenting). My Brethren affirmed this case on three propositions: (1) Because the undisputed evidence showed that the entry by plaintiff on the land was peaceable; (2) because in 1892 appellants purchased a portion of the survey from the holders of the record title; (3) because in 1899 or 1900 the owner of the land entered thereon and cut and removed timber therefrom. I cannot agree with this disposition of the case.

In 1887, Jubal Evans moved into a little house on this large survey of land for the purpose of keeping boarders for one Hester, who was cutting timber from the land; the purpose of his entry being to keep boarders for Mr. Hester, as long as Mr. Hester remained on the logging job. In the fall of 1887 and in the spring and summer and fall of 1888, Jubal Evans cleared up something like 15 acres of land three-fourths of a mile from this boarding house. This land he cultivated every year from 1888 until 1904. His testimony is very full and complete that he cleared this land for the purpose of acquiring title to 160 acres by limitation. In 1892, he bought from the owners of the large survey 160 acres, including the boarding house and improvements surrounding it. This trade was made by him through Mr. Hester. At the time he bought this land, he told Mr. Hester that he was claiming 160 acres down next to the creek; that he did not want to live down on that land; and that he wanted this 160 acres around the boarding house for a place to live. At no time did the plaintiff assert title by limitation to any portion of the land bought by him through Mr. Hester. According to the testimony of plaintiff, he at all times claimed his field of 15 acres and enough land surrounding it to make 160 acres, and, beginning in 1892, from time to time told Mr. Hester that he was claiming it. This claim began in 1887 and continued until 1904, at which time he moved away.

While my Brethren are correct in saying that the original entry on this land was peaceable, in my judgment the clearing of 15 acres of land, three-fourths of a mile from the boarding house, was adverse and hostile to the purposes of his entry. It had nothing to do with operating the boarding house, and was in no way incident to nor related to the purposes of the original entry. It was a question for the jury whether the facts testified to by plaintiff were sufficient to put a reasonably prudent man on inquiry as to the nature of his possession and the extent of his claim.

I recognize the general rule:

"So long as the relation of landlord and tenant exists, the tenant cannot acquire an adverse title as against his landlord." R. C. L. vol. 1, 747.

But this authority, on the same page, states the further rule:

"It is equally well settled that one who enters as a tenant is not, merely because of that fact, precluded from subsequently holding adversely to his landlord. To do so, however, it is necessary to renounce the idea of holding as tenant, and to set up and assert an exclusive right in himself. It is also essential that the landlord should have actual notice of the tenant's claim, or that the tenant's acts of ownership should be of such an open, notorious, and hostile character that the landlord must have known it."

Jubal Evans' act in clearing up 15 acres of land and cultivating the same from year to year was in no way concealed from the owners of the land. It was open, notorious, and hostile to their title.

My Brethren are also sustained by the record in saying that in 1892 appellants entered into an agreement to buy 160 acres of land from the owners of the record title. However, the record further shows that, in buying this land, Jubal Evans expressly and positively stated to the agent of the owners that he was buying it for a home and for a place

to live, because he did not want to live on the 160 acres in the bottom. It seems to me that this express assertion of a claim to 160 acres by limitation takes this case out of the rule announced in the authorities cited in the opinion of the majority of the court.

If Jubal Evans had any title to the land, it was by limitation. If he had any limitation, it began in 1887. The owners of the record title did not enter for the purpose of cutting the timber until 1899. Hence the third ground advanced in the opinion of the majority of the court would have no application to the facts of this record.

HIGHTOWER, C. J. In the majority opinion in this case, prepared by Justice BROOKE, it appears that the trial court's judgment was affirmed for three separate and distinct reasons. I agreed with Justice BROOKE that the judgment should be affirmed for the first and third reasons stated in the majority opinion, but I do not think that the judgment could be correctly affirmed on the second ground alone, as stated in the opinion. In other words, I do not think that the purchase by Evans of 160 acres by specific metes and bounds of the Brown survey was, as a matter of law, such a recognition of title in the Reliance Lumber Company to the whole of the Brown survey as would prevent Evans from acquiring title by adverse possession, had there been such, to some other portion of the Brown survey.

In all other respects I fully concur in the opinion as prepared by Justice BROOKE, affirming the judgment of the trial court.