**HANKAMER et al. v. SUMRALL et al.**

No. 4801.

Court of Civil Appeals of Texas. Beaumont.

April 23, 1953.

Rehearing Denied May 20, 1953.

Fountain, Cox & Gaines, and Cleaves & Cleaves, Houston, Forse, Forse & Bacon, Newton, Cecil, Keith & Mehaffy, Beaumont, and Murray G. Smyth, Houston, for appellant.

Fred W. Moore, Houston, Fisher, Tonahill & Reavley, and Ward W. Markley, Jasper, for appellee.

PER CURIAM.

This as an appeal from a judgment in favor of the appellees Trudie A. Sumrall, et al., against the appellants Earl C. Hankamer, et al., in a trespass to try title suit in the district court of Newton County. The appellees brought suit to recover a specific 160 acres of land out of the J. E. Adams 685 acre tract in the Matilda Runnells League in Newton County, and in the alternative to recover an undefined 160 acres, in said tract, including the land on which the improvements were located, commonly called "the old Sumrall place", and praying that the trial court define and fix the 160 acres, inclusive of said improvements. The appellees claimed title under the 10-year statute of limitation, claiming under their ancestors Elisha Sumrall and wife. The appellants answered the suit by pleas of general denial, not guilty and the 2-year, 3-year, 5-year, 10-year and 25-year statutes of limitation.

The case was tried to a jury. The court submitted five special issues in its charge. The jury by its verdict answered such special issues favorably to the appellees, the plaintiffs below. On the verdict the trial court entered judgment for the appellees for an undefined 160 acres, and found in its judgment that the specific 160 acres described in the pleadings of the plaintiffs below was a fair, equitable and just allotment or partition of the undefined acreage and awarded judgment for such 160 acres so described. The appellants filed a motion non obstante veredicto and for a new trial, both of which motions were overruled. Thereafter they have perfected their appeal to this court.

The charge of the court, without the preliminary portions thereof, was as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that plaintiffs' ancestors under whom they claim had and held peaceable and adverse possession of the property sometimes called the 'Old Sumrall Place' on the Pocket Road near Slaydon's Creek, Newton County, Texas, using, cultivating, or enjoying the same for any period of ten consecutive years or more from 1882 to 1896?

"Answer 'Yes' or 'No'.

"Answer: Yes.

"'Adverse Possession', as that term is used in this Charge, means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of all others.

"'Peaceable possession', as that term is used in this Charge, is such as is continuous and not interrupted by adverse suit to recover the estate.

"If plaintiffs' ancestors under whom they claim were temporarily absent from the land here involved and such absences were not unreasonable under all the surrounding facts and circumstances, then such absences, if any, would not prevent the use and enjoyment of the land here involved by plaintiffs' ancestors under whom they claim from being regarded as continuous and uninterrupted.

"'Claim of right' as used hereinabove, means the entry of the claimant must be with the intent to claim the land as his own, to claim it and hold it for himself.

"If you have answered Special Issue No. 1 'Yes', and only in that event, then answer this issue:

"Special Issue No. 2

"Do you find from the preponderance of the evidence that plaintiffs' ancestors during the said ten year period or more, if any, when they held possession of the land in controversy, if you have so found, claimed to own an undefined 160 acres inclusive of the improvements upon said land?

"Answer 'Yes' or 'No'.

"Answer: Yes.

"If you have answered Special Issue No. 1 'Yes', and in that event only, you will answer the following:

"Special Issue No. 3

"From a preponderance of the evidence, state when such adverse possession, if such you have found, was commenced? You

will answer by giving the day, month and year.

"Answer: Jan. 1, 1883.

"Special Issue No. 4

"Do you find from the preponderance of the evidence that other persons than plaintiffs and those under whom plaintiffs claim held adverse possession of the property in controversy, using, cultivating or enjoying the same during any part of the period between 1882 to 1896?

"Answer 'Yes' or 'No'.

"Answer: No.

"If you have answered the foregoing Special Issue No. 4 'Yes', and only in that event, then answer the following Special Issue:

"Special Issue No. 5

"From the preponderance of the evidence, for how long a period of time, if any, do you find such person or persons held adverse possession of the property in controversy?

"Answer by giving the dates, if any.

"Answer: —————

"When you have retired to consider of your verdict you will select your foreman, and your answers to the above and foregoing issues when returned into open court will constitute your verdict in this case."

The answers of the jury to the first four Special Issues are shown immediately following each Special Issue above.

The appellants by their Points 2 and 3 complain of the sufficiency of the evidence to warrant submitting Special Issues Nos. 1, 2 and 3 to the jury and also complain that such answers of the jury to those Special Issues are without support in the evidence and are contrary to the preponderance of the evidence. Under these Points the appellants say that since the appellees were claiming limitation title to the land in controversy and were claiming that such limitation of title was perfected by their ancestor Elisha Sumrall, the evidence adduced did nothing more than show that Elisha Sumrall did at one time or another occupy the premises and that the premises were sometimes known as the Sumrall place. They contend that they showed by uncontradicted evidence that at numerous times, during a period of time when the appellees claimed that Elisha Sumrall was living on the place, he was actually living elsewhere. We disagree. We have read the entire statement of facts as well as the portions thereof which are quoted in the briefs of the parties and believe that the evidence was sufficient to raise the issues of fact submitted to the jury and to support the findings and answers made to Special Issues by the jury. There was evidence that Elisha Sumrall, also known as Lige Sumrall, lived on the premises in question from 1882 or 1883 with his family until he died in 1896; that he was claiming it as his home; that the place was known as the "old Sumrall Place" after the Sumralls began to live there; that since 1897 no one had lived on the place and that it was open range; that he was the only person claiming that place during the time he lived on it; that he was claiming a 160 acre homestead; that when he was away working at Blue Prairie or Old Salem he did not move his household goods but kept them on the old Sumrall place; Blue Prairie and Old Salem were small logging camps 3 or 4 miles away from the old home place; while he was working down there he grew a garden and carried some of the crop back to his family on the home place every few days; that at both places he made occasional trips back and forth to the home place. There was other testimony to the effect that Lige Sumrall was away from the place at other times, but this was not conclusive and merely served to raise an issue of fact for the jury to determine in answering the court's Special Issues in regard to continuous and adverse possession. There was testimony that the Sabine Tram Company had cut some timber on the Matilda Runnells League and off the premises in question and there was testimony that they did not cut any timber during the period when the appellees contend that Elisha Sumrall was occupying the land. There is no evidence in the record showing a record title in anyone to the land in dispute. Various instruments were introduced in evidence as deeds and judgments and powers of attorney but none of them are

brought forward in the statement of facts. There was other testimony in the record showing that the possession and use of the property by Elisha Sumrall was not continuous during the period from 1882 to 1896, but it is not conclusive and served only to raise a fact issue to be determined by the jury. The verdict of the jury finds support in the evidence and the appellants' Points 2 and 3 are overruled.

■ The appellants complain of the action of the trial court in using the phrase "the property is sometimes called the old Sumrall place on the Pocket Road near Slaydon's Creek," in the wording of Special Issue No. 1 in the Court's charge. They say this was prejudicial to their rights because the evidence showed that the property was also known as the old Mims place and the old Richardson place and thus the phraseology complained of constituted a comment on the weight of the evidence. We see no merit in this contention. A great many of the witnesses testified and referred to the property as the "Old Sumrall Place." It was also shown that when Mims lived on it it was known as the old Mims place and when Richardson lived on it it was known as the old Richardson place and one witness testified that "an old place takes its name by the last man that lives there generally." The court's charge did not submit any issue as to the cultivation, use or enjoyment of any specifically described tract of land, and therefore Special Issue No. 1 was submitted under the appellees' alternative suit for an undefined 160 acres. Under such circumstances it was not improper for the trial court to use the phrase "sometimes known as the old Sumrall place" in describing the land in controversy.

■ By their 5th Point the appellants complain of the court's definition of temporary absences and peaceable possession. That portion of the charge which is quoted above which defines peaceable possession conforms to the statutory definition. That portion of the charge which pertains to temporary interruption of possession was warranted under the circumstances under the authority of Halsey v. Humble Oil & Refining Co., Tex.Civ.App., 66 S.W.2d 1082; Wickizer v. Williams, Tex.Civ.App., 173 S.W. 1162.

The appellants' Points Nos. 6 and 7 are not briefed by the appellants and will not be discussed. They present no error and are overruled.

Appellants' Point No. 1 is multifarious and complains of the action of the trial court in refusing to submit their specially requested Issues Nos. 1, 2, 3, 4, and 5. Their brief is not indexed in any way, and this method of presenting these questions has made it difficult to extract from the briefs, transcript and statement of facts the true nature of this segment of the controversy. We have done so, however, and consider Point No. 1 under the five different subjects raised by the appellants' complaint in regard to the five requested Special Issues refused by the trial court. The five requested Special Issues are not set out in the appellants' brief and the brief contains no reference to the transcript by which they may be found. The brief does not set out, under this Point No. 1, any of the evidence which the appellants contend required the submission of the five requested issues by the court.

The requested issues, refused by the court, were as follows:

### Special Requested Issue No. 1

Do you find from the preponderance of the evidence that Jake Richardson moved onto the land in controversy at any time between the years 1884 and 1889, both inclusive, and lived thereon with his family and raised a crop on said land?

Answer "Yes" or "No".

### Special Requested Issue No. 2

Do you find from a preponderance of the evidence that Cow Creek Tram Company or George Adams, or his or their employees, went on the land in controversy between the years 1889 and 1895, both inclusive, and cut and removed timber from the land in controversy?

Answer "Yes" or "No".

### Special Requested Issue No. 3

Do you find from the preponderance of the evidence that Joel McMahon got per-

mission from Mat Bevins to move in the house on the land in controversy and resided there during the latter part of the year 1889?

Answer "Yes" or "No".

### Special Requested Issue No. 4

Do you find from the preponderance of the evidence that Elisha Sumrall moved in the house on the land in controversy from Herrin's Branch at the request and with the permission of Joel McMahon about the year 1889?

Answer "Yes" or "No".

### Special Requested Issue No. 5

Do you find from a preponderance of the evidence that Elisha Sumrall only claimed the improvements and that portion of the land in controversy enclosed by fence?

Answer "Yes" or "No".

■ ▇▇▇ Appellants argue that if the trial court had submitted the above requested issues, a favorable answer to any of them would have required a judgment in their favor; that such findings would have been fatal to appellees' claim of limitation. Appellees answer that these were issues which would have submitted only evidentiary matters and that they did not attempt to submit ultimate issues of fact. As we see it, some of the issues were in regard to only evidentiary matters, and some were not. Each issue must be discussed separately. Appellees say that the special issue number four, given by the court in its charge, submitted all the matters inquired about in the requested issues; that such issue was most favorable to appellants; and they point out that no objection was made by appellants to the submission of special issue number four. Special issue number four, inquiring whether any other persons than appellees and those under whom they claim held adverse possession of the property in suit, using, cultivating, or enjoying the same during any part of the period between 1882 and 1896, appears to place the burden on appellants to show adverse possession on the part of any third persons who may have been in possession of the property during the claimed limitation period. Appellants

were not under such a burden in attempting to defeat the limitation claim of appellees by showing that other persons were in possession of the land during the limitation period. All they were required to do was to show that Sumrall's possession was not interrupted by possession on the part of other persons. However, since no such objection was made to Special Issue number four, and since the trial court was not given an opportunity to correct the wording of that issue, the wording of that issue cannot be relied on by appellants for reversal of the judgment against them.

■ ▇▇▇ Requested Special Issue No. 1 inquired whether Jake Richardson moved on the land at any time between 1884 and 1889 and lived there with his family and raised a crop there. The only evidence which may have raised such an issue is to be found in the testimony of R. T. Richardson, Jake Richardson's son. The testimony of this witness, who was in his eighty-second year at the time of the trial, is so vague and indefinite that the trial court was justified in not submitting the requested issue based on his testimony because of its insufficiency to raise the issue requested. The requested issue covered the period of time between 1884 and 1889, inclusive, whereas R. T. Richardson testified that after his father and family had moved away from the place in about 1882, he, the witness, had visited him on the old home place and found him living there in 1888. He first said '98, but corrected that date to '88. He was confused about dates and places, and sometimes referred to the visit to the place in Orange County, instead of Newton County, where the property in suit is located. His younger sister, Mrs. Dorman, testified that her parents moved away from the old place in 1882 and never went back there to live. There is no evidence or testimony from R. T. Richardson as to his father living on the place in any year during the claimed limitation period except his statement that he saw him there in 1888. There is nothing which would warrant submission of the requested issue, inquiring whether Jake Richardson occupied the place at any time between the years 1884 and 1889, inclusive.

832

■ Requested Issue Number 2 inquired whether Cow Creek Tram Company or George Adams, or employees, cut and removed timber from the land between 1889 and 1895, inclusive. The appellants refer to the tram company and Adams as their predecessors in title, but we do not find anything in the evidence substantiating this statement. No record title to the land is shown in any of the parties to the suit. The testimony that Adams cut timber off portions of the Runnells League is not sufficient to show that he was in possession as a true owner, cutting timber, and therefore to be regarded as in possession of all the tract not enclosed, as was the case in Evans v. Houston Oil Co., Tex.Civ.App., 211 S.W. 605. The requested Special Issue No. 2 inquired about a purely evidentiary matter, and the court's refusal to submit it was not error. The testimony about the dates of cutting timber on the old place, the property in suit, is vague and indefinite. Since Sumrall's claim was from 1882 to 1896, in order to defeat the limitation claim by showing an interruption of possession, the appellants would not have been entitled to judgment if the requested issue number two had been submitted and had been answered in the affirmative by the jury. Such an answer could have been a finding that Adams or the tram company had cut timber on the land in 1894 or 1895, which finding would not have been fatal to appellees' claim of a limitation period between 1882 and 1893. We do not believe that error is shown in the failure to submit this requested issue.

■ Requested Issues Nos. 3 and 4, inquiring whether Joel McMahon got permission from Mat Bevins to move in the house on the land and resided there during 1889, and whether Sumrall moved in the house on the land from Herrin's Branch at the request of and with the permission of Joel McMahon in 1889, were questions relating to evidentiary matters. They inquired in a detailed way concerning matters which were submitted by the court in its charge in Special Issue No. 1. That was the issue inquiring whether appellees' ancestors had had peaceable and adverse possession of the property in suit, using, cultivating or enjoying the same for any period of ten consecutive years or more, from 1882 to 1896. The Requested Issues 3 and 4 are merely detailed questions involving the nature of the possession by Sumrall of the premises during the period claimed. We believe that no error is shown by refusing to give them as requested.

■ Requested Special Issue No. 5 inquired whether Sumrall "only claimed the improvements and that portion of the land enclosed by fence". There was no special plea by the appellants that Sumrall was claiming only the improvements and the land under fence. The only evidence we can find in the statement of facts of any claim by Sumrall was that he was claiming a homestead of 160 acres. If he was claiming any land at all, according to the evidence, he was claiming the undefined 160 acres, whether under fence or not. We find no basis in the evidence for this requested issue. This matter as to what Sumrall was claiming was submitted to the jury in the court's charge in Special Issue No. 2, and was answered in the affirmative.

■ We believe that the verdict of the jury is supported by the evidence, and that no error requiring a reversal has been brought forward by the appellants. They introduced no evidence in support of their limitation pleas, and did not show any record title in any of the parties. Their defense seems to be based entirely on their efforts to show that the possession of the land in question by Sumrall was not continuous, or on their contention that the evidence adduced by the appellees shows that such possession was not continuous. This they did not succeed in doing to the satisfaction of the trial court and jury, and they have not convinced us that the trial court was in error.

The judgment is affirmed.