

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

September 17, 1973

The Honorable Hugh C. Yantis, Jr.　　　Opinion No. H- 105
Executive Director
Texas Water Quality Board　　　　　　Re:　　What is the meaning
P. O. Box 13246, Capitol Station　　　　　　of the term "total
Austin, Texas 78711　　　　　　　　　　　continuous service"
　　　　　　　　　　　　　　　　　　　　　as used in House Bill
　　　　　　　　　　　　　　　　　　　　　139, General Appro-
　　　　　　　　　　　　　　　　　　　　　priations Act, 63rd
Dear Mr. Yantis:　　　　　　　　　　　　Legislature?

　　　The General Appropriation Bill for the 1974-1975 fiscal years (House
Bill No. 139, 63rd Legislature) contains, as §a(1) of Article V "Salary
Rates for Classified Positions, " the following provision:

> "An employee who is classified in Salary Groups
> 2 through 7 inclusive on the effective date of this Act who
> has either five (5) years or more total <u>continuous service</u>
> with the State of Texas as of September 1, 1973, or will
> complete five (5) years total <u>continuous service</u> with the
> State of Texas during the fiscal year September 1, 1973
> to August 31, 1974, will be awarded a one-step increment
> increase on September 1, 1973. or on the day he completes
> five (5) years service during fiscal 1974, but not to exceed
> Step 8 of the Salary Group in which such employee is serv-
> ing . . . ." (emphasis added)

　　　You note that several employees of your agency have worked continuously
for the State for five or more years. However, they have not had five years
continuous service "during the past five years (1968 to 1973). " You ask whether
they are entitled to the longevity raise.

　　　Your request concerns the eligibility of a person whose five years of
"continuous service" may have terminated sometime in the past but who since

p. 490

has resumed State employment.   We have also been asked by a number of other State agencies to determine the eligibility of those who, though employed more than five years ago, during the period of their service, have had some interruption such as a prolonged illness, etc.

Article 3, § 44 of the Constitution provides:

> "The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ anyone in the name of the State, unless authorized by pre-existing law. "

In accordance with the constitutional mandate, the Legislature has enacted Article 6813b, most recently amended in 1965 (Acts 1965, 59th Leg., ch. 46, p. 118), which provides that all salaries of all State officers and employees shall be determined by the Legislature in the biennial appropriations act.

Although the Position Classification Act of 1961 (Article 6252-11, V.T.C.S.) provides that the salaries of all full-time salaried employees not specifically excepted from its coverage shall be in accordance with the Position Classification Plan, we see no problem with the longevity provisions of House Bill 139 since they merely provide for the classification of certain employees within the Plan, not outside of it.

Although not involving the Position Classification Act, Attorney General Opinion WW-1152 (1961) did involve the validity of a provision in the General Appropriation Bill prescribing a schedule of increased compensation for employees of the State Highway Department based upon the total length of service

within the Department. In that opinion, this office found the provision to be valid and not in violation either of §44 of Article 3, of §51 of Article 3 or of §6 of Article 16 of the Constitution.

The power of the Legislature to prescribe salaries under §44 of Article 3 is broad and, in determining the constitutionality of any statute enacted under it, every possible presumption obtains in favor of constitutionality. Commissioners Court of Lubbock County v. Martin, 471 S. W. 2d 100 (Tex. Civ. App., Amarillo, 1971, err. ref'd, n. r. e.).

We are of the opinion, therefore, that so much of House Bill 139 as provides for additional compensation to State employees having five years or more of "continuous service" is valid and constitutional.

In determining what is meant by "continuous service," we are charged by Article 10, V. T. C. S., with applying to words their ordinary "signification." At the same time we are charged by the same statute to "look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

"Continuous" is defined as being synonymous with "uninterrupted." Literally, it means something which takes place in unbroken sequence.

Were we to give to it a strict and literal meaning, we would be compelled to hold that "continuous service" as used in House Bill 139 requires uninterrupted service by an employee or officer of the State. Significantly, also, the Legislature used the word "service" and not "employment." Giving to "service" its literal, dictionary meaning, it, too, would restrict the longevity benefits to employees who actually served the State. Those who remained in its employ but, for instance, were on vacation (certainly not "serving") would interrupt their service and would not "continuously serve" the State.

However, to adopt such an interpretation would, in our opinion, defeat the intention of the Legislature which we construe to have been to encourage employees to remain in the employ of the State and to reward those who do.

We believe that in determining the intention of the Legislature in adopting the language used, we should give to it a fair and sensible construction to carry

out its purpose and not one which would nullify or defeat the legislative intent. Certainly we should not adopt a construction which would lead to an absurd conclusion. Railroad Commission v. St. Louis Southwestern Railway Co., 443 S.W. 2d 71 (Tex. Civ. App., Austin, 1969, err. ref'd, n.r.e.).

There is valid authority to support our conclusion that "continuously" should not be given its literal interpretation. Germania Farm Mutual Aid Association v. Anderson, 463 S.W. 2d 24 (Tex. Civ. App., Waco, 1971, no writ) was a suit brought upon a policy of fire insurance which provided there was no coverage if the premises were vacant and defined vacancy as a condition when there was no person "living on the immediate premises continuously . . . ." (emphasis added). Citing from 4A Appleman, Insurance (1969), § 2834, the court said:

> " 'Continuously' as used in connection with a vacancy clause is held to authorize 'more than one period of unoccupancy to exist, ' and 'does not imply that someone shall remain in the building all of the time without interruption. ' " (463 S.W. 2d at 25)

"Adverse possession" as used in statutes of limitation with reference to real property is defined by Article 5515, V.T.C.S., as being "an actual and visible appropriation of the land, commenced and continued, " under a claim of right inconsistent with and hostile to the claim of another. It has been construed to require that the possession be "continuous. " Holstein v. Adams, 10 S.W. 560 (Tex. 1889); Boone v. City of Stephenville, 37 S.W. 2d 842 (Tex. Civ. App., 1931, no writ); 2 Tex. Jur. 2d, "Adverse Possession" § 70, p. 145, et seq. However, temporary absences which are not unreasonable under the surrounding facts and circumstances, do not prevent the occupancy from being considered continuous and uninterrupted. Hankamer v. Sumrall, 257 S.W. 2d 827 (Tex. Civ. App., Beaumont, 1953, err. ref'd, n.r.e.); 2 Tex. Jur. 2d Adverse Possession, § 72, p. 149, et seq.

The law of easements requires that, to establish an implied easement, use must be "continuous. " This has been held satisfied by the necessarily intermittent use of a driveway by the occupants of a house and their guests. Bickler v. Bickler, 403 S.W. 2d 354 (Tex. 1966).

Decisions in other jurisdictions may be of interest. In Kennedy v. Westinghouse Electric Corp., 108 A. 2d 409 (N.J. 1954), suit was brought to recover holiday pay for a holiday to which employees were entitled if they had "completed three months continuous service" prior to the date of the holiday. During the three month period, the employees had voluntarily entered into a work slow-down. The New Jersey court decided against the employees because the service rendered was not the service contemplated in the agreement. Nevertheless, it said:

> "We may conclude that 'continuous' service does not contemplate the performance of labor during every scheduled shift hour of every work day. In the very nature of things 'there is really no such thing as continuous labor. Holidays, sicknesses, recreation periods, week-ends, all are breaks in the continuity of one's occupation, but would not necessarily destroy its continuity. 'United States v. Perry, 55 F. 2d 819, 821 (8 Cir., 1912). Paragraph (d) is to be read, we think, as implying no more than that breaks of service for personal or other reasons which would appeal to reasonable men to be excusable in the particular circumstances shown will not destroy continuity of service. We are dealing here, however, with a concerted and deliberate refusal of employees to complete their scheduled shifts. . . . "
> (108 A. 2d at 415-416)

The court declined to decide whether excused absences or absences due to causes beyond the control of the employee would break the record of continuous service.

The dictum of the Kennedy case is supported by other decisions: Garnski v. Metropolitan Life Insurance Co., 287 N.W. 731 (Wis. 1939) holding that for the purpose of disability insurance, the requirement of continuous employment for two full years was satisfied despite the fact that the employee had been laid off for six months because of a reduction in work force; U.S. v. Fitzpatrick, 62 F. 2d 562 (10th Cir. 1933) holding that "continuous employment" meant working with reasonable regularity and was not destroyed by interruptions due

to periods of temporary illness; State ex rel Mulrine v. Dorsey, 272 A. 2d 709 (Del. 1970) affirming an administrative ruling that "continuous service" as used with reference to a pension act did not preclude excused interruptions in service of less than one year.

On the other hand, "continuous" has been construed by Texas courts. For example, Article 1269m, Vernon's Texas Civil Statutes, requires that promotional examinations be open to policemen and firemen "who have held a continuous position for two (2) years or more in the classification . . ." and that "No person shall be eligible for promotion unless he has served in such Department for at least two (2) years immediately preceding the day of such promotional examination. . . ." In City of Houston v. Landrum, 448 S. W. 2d 816 (Tex. Civ. App., Houston, 1970, err. ref'd., n. r. e.), it was held that Landrum was ineligible for an examination where there had been a lapse of some five months in his "continuous service" during the two years preceding the examination although he had been employed as a fireman off and on for some twenty years. And see City of San Antonio v. Pinchbank, 489 S. W. 2d 451 (Tex. Civ. App., San Antonio, 1972, no writ hist.).

In Wolfe v. State, 75 S. W. 2d 677 (Tex. Crim. 1934), the penal provision, aimed at marathon dance contests, prohibited contests involving "any one continuous, competitive period of endurance" exceeding 24 hours. Where the evidence showed that the contestants were required to rest 15 minutes of every hour, the court, citing the dictionary definition of "continuous" as being "without break, cessation or interruption" etc., held that the evidence failed to establish the prohibited "continuous, competitive period."

In Crane v. Bankers Life and Casualty Company, 281 S. W. 2d 117 (Tex. Civ. App., Eastland, 1955, no writ hist.), suit was on a policy of hospitalization insurance which provided that the company would not be liable for benefits for more than 120 days "for any one - continuous period of sickness." The evidence showed that the plaintiff had been hospitalized for 120 days, being released on August 20th and that he returned to the hospital on November 16th, suffering from basically the same condition. Adopting a rather technical definition of "sickness," the court held that there was not "one continuous period of sickness" within the meaning of the policy.

"It is conclusively shown that there was a break,
a cessation, an interruption, in the type, or degree
of sickness insured against and for which appellee
agreed to pay the expenses." (281 S.W. 2d at 120)

House Bill 139 recognizes and provides for vacations, sick leave, emergency leave, a leave of absence with full pay for those called to active duty with the National Guard and others. We are advised that various agencies likewise provide for leaves without pay under certain circumstances. Were we to adopt a strict and literal interpretation of "continuous service" it would be difficult to apply the law in a manner consistent with the legislative intent. Instead, we feel that, as stated by the New Jersey court in the Kennedy case, supra, "continuous service" does not contemplate the performance of labor every day of every week for five consecutive years. Rather, it requires five years of service unbroken by any unauthorized or unreasonable absences. Holidays, days on sick leave, week-ends, emergency leaves and other approved leaves, with or without pay, do not break the continuity of service.

Whether or not and under what circumstances absences will be approved or will affect the continuity of service are matters for determination either by specific legislation or by those to whom the Legislature has delegated the responsibility of establishing employment policies. We, certainly, cannot prescribe what they shall be. We do believe, however, that whatever policies are established, they must be enforced uniformly and equitably among the employees of any employing agency to meet the requirements of the Fourteenth Amendment to the Constitution of the United States that citizens be accorded equal protection of the law.

With reference to your precise question, we answer that, since the appropriations act does not require that the continuous service be completed immediately prior to the eligibility for longevity pay or that the service, once established, continue until such time, it is our opinion that an employee having five years continuous service at any time, whether subsequently interrupted prior to the fiscal year in question or not, is entitled to the longevity pay.

### SUMMARY

Holidays, vacations, approved sick leave, other approved leaves of absence, with or without pay, do not break the continuity of one's service so as to preclude five years "continuous service" necessary to entitle a state employee to receive longevity pay. The five years may be completed at any time prior to the fiscal year in question and once completed entitle the employee to the longevity pay despite the fact that, subsequent to the completion, there may have been an unauthorized interruption.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee